(22 App. Div. 11.)

## CAFRE v. LOCKWOOD.

(Supreme Court, Appellate Division, First Department. November 12, 1897.)

1. SALE—WARRANTY.

In a sale of goods to be delivered, it is a condition precedent to the performance of the contract that the goods delivered should be of the same kind as those described in the contract; but, if they are of that kind, the mere fact that it was understood by the parties (the seller not being a manufacturer of the goods) that they were to be used for a specified purpose raises no warranty that they are to be fit for that purpose.

2. SAME—AUTHORITY OF AGENT TO WARRANT.

Where a contract for sale of goods is made through an agent of the seller, there is no implied authority on the part of the agent to warrant the quality of the goods, unless it shall be made to appear that it was the usual custom in sale of goods of that kind for an agent to warrant them.

3. SAME—INSPECTION BY PURCHASER.

Where goods delivered are of the general kind which were bought, and there is no warranty of quality, the buyer is bound upon receipt of them to inspect the goods, and reject them if not satisfactory.

4. SAME—EVIDENCE.

The burden is upon a buyer of goods without any warranty to show that he inspected them and rejected them within a reasonable time.

5. INSTRUCTIONS—QUESTION FOR JURY.

Where the evidence is such that it would have been correct for the judge to charge the jury that there was no warranty, express or implied, the fact that he charges them that there was no implied warranty, but it is for them to say whether there was an express one, and that they find there was not, gives no ground for complaint.

6. APPEAL—OBJECTIONS NOT RAISED BELOW.

Where a charge is incorrect as a general proposition, but correct as applied to the particular facts of the case, and the defeated party made no objection or request for more specific instruction, he is not in a position, on appeal, to object that the charge should have been more particular or specific.

Appeal from trial term.

Action by Joseph Cafre against Eugene L. Lockwood. From a judgment entered upon the verdict of the jury, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

George A. Sterns, for appellant.

Francis D. Hoyt, for respondent.

RUMSEY, J. The action was brought to recover an agreed sum which was alleged to be due from the defendant to the plaintiff by reason of the sale to the defendant of certain hemp twine, in the early part of the year 1894. The defendant admitted the contract to sell to him hemp twine, but he denied that such goods were delivered to him, and he set up as a counterclaim that the property delivered to him was not such as the plaintiff agreed to sell, but was of a wholly inferior quality; that the plaintiff warranted the goods to be hemp twine; that the defendant, relying on the warranty, received them, and used them; that they were not hemp twine, but were jute, and of an inferior quality of goods, and worthless to the

defendant; and he sought to recover damages which he sustained by reason of the violation of the contract of warranty. The questions arise solely upon this counterclaim.

The defendant was a manufacturer of paper, and in that work he required, for particular grades of paper, a very strong hemp twine, as he says. The contract for the purchase of this twine was made through a broker, and the plaintiff wås not present during any of the negotiations. The facts upon which the defendant relies as establishing that the twine was sold with a warranty are set up particularly in his own testimony, and are, substantially, that the broker came to him, saying that he would be glad to sell him such stock as he might require in his paper mill. He told the broker, as he testifies, expressly what he wanted; that he was manufacturing a particular grade of fine paper, that required a very strong hemp twine, on account of the strength and on account of the color, —something that would bleach very white. He said the broker told him that he knew exactly what he wanted, and that he would and could furnish such stock. On the strength of that, the defendant says that he told him that he was ready to purchase such stock whenever he had any for sale. In a few days afterwards the broker came to him, saying that he had about a car load of hemp twine which he could furnish at a price then stated, and the defendant told him that, if it was the kind he required, he was perfectly willing to pay the price, that he wanted it for a particular purpose, and that no other kind of twine would answer the purpose, to which the broker replied that he would guaranty the twine to be equal to anything the defendant had bought for that purpose. As the result of that conversation, the defendant purchased 50 bales of twine, which were delivered at his mill, and were used by him in the manufacture of paper. The defendant testifies that, after this twine had been used, he had another conversation with the broker, in which he told him that he had found this twine to be unsuitable for the purpose of making the fine grade of paper, and he could not use any more of that class of goods, upon which the broker told him that he had another lot for which he would charge a little more; and it was agreed that the broker was to send him two tons as a sample, which he was to try and report upon, and, if that was satisfactory, he would buy more of it. Instead of sending two tons, the broker caused to be shipped to the defendant 35 bales. This was received. Seven bales of it were used, and it, too, was found to be unsuitable for the purpose for which it was intended. The subsequent transactions with regard to that will be considered later.

The first question is: What was the nature of this contract? Was it simply a contract for the sale of goods of a specified kind, or was there to be implied from the transaction, in addition to the contract of sale, a collateral contract of warranty, which the defendant was authorized to rely upon, that the goods should be of a particular quality? We think that no warranty of quality could be implied in this case. The seller here was not a manufacturer of

the goods, and the fact that he knew the purpose for which the goods were to be sold is not sufficient to raise an implied warranty of quality against one who is merely a dealer. Bartlett v. Hoppock, 34 N. Y. 118; Dounce v. Dow, 64 N. Y. 411. The contract was to furnish hemp twine, and no further warranty than that could be implied from what was said. The case is precisely within the case of Dounce v. Dow, supra, in which the rule applicable to such contracts was finally settled in this state. See, also, Iron Co. v. Pope, 108 N. Y. 236, 15 N. E. 335; Benj. Sales (Bennett's Ed.) § 644. In these cases it has been held that it was a condition precedent to the performance of the contract that the goods delivered should be of the same kind as those described in the contract; but, if they were of that kind, the mere fact that it was understood by the parties (the seller not being a manufacturer of the goods) that they were to be used for a specified purpose did not raise an implied warranty that they were to be fit for that purpose. In this case, too, it appears without dispute that the transaction was had entirely through an agent, and that there was no dealing between the defendant and the plaintiff personally until after the goods had been delivered, and a portion of them had been used. Where a contract for sale is made through an agent of the seller, there is no implied authority on the part of the agent to warrant the quality of the goods, unless it shall be made to appear that it was the usual custom in sales of goods of that kind for an agent to warrant them, or actual authority was given to him for that purpose. Smith v. Tracy, 36 N. Y. 79; Wait v. Borne, 123 N. Y. 592, 604, 25 N. E. 1053; Benj. Sales (Bennett's Ed.) § 724. As there was no pretense of any authority in the agent here to warrant arising either out of the customs of trade or by express authority, no warranty can be implied from the contract which he made. There being no warranty of quality in this case, the buyer was bound, upon receipt of them, to inspect the goods, and reject them if not satisfactory, where, as here, the goods delivered were of the general kind which were bought. Cases cited above.

In the case of the 50 bales first sold, there was no claim that anything of the kind was done. The defendant says expressly that he had used all of that 50 bales before saying anything about the defective quality. But, with regard to the 35 bales, it is probable a different question arose. In that case it was claimed by the plaintiff and his broker that the sale of the 35 bales was an absolute sale, and that the defendant, having used 7 bales without objection, and never having returned the remainder, was bound to pay for them. The defendant, on the contrary, insisted that, by the terms of the contract, he was at liberty to use a part of the goods for the purpose of testing them, and he said that he did use 7 bales for that purpose, when he discovered that the twine was worthless for the purpose for which he desired it. He says that he at once notified the plaintiff of that fact, and that the plaintiff, coming to his place of business, agreed to take back the remaining 28 bales, and a settlement was come to as to the manner of payment for the remainder.

The 28 bales, however, were not sent back. The defendant gives reasons why that was not done. The plaintiff says that the arrangement was that, if the defendant did not want to keep that which he had not used, he could send it back, and the plaintiff would receive it. Upon this point there was a clear conflict of testimony. The burden was upon the buyer to show that he had inspected the goods and rejected them within a reasonable time, and that question should have been submitted to the jury. The court, speaking generally with regard to the goods, told the jury that they were to say whether the defendant went on and used the goods, and allowed so much time to pass, without objection to the defect, that it must be said that he accepted them; and they were told that if he did go on and use the goods, and waited an unreasonable time to object, even if there was a warranty, he must be held to have waived it. While this language was not correct if there had been a warranty, it was correct as applied to the facts which were made to appear in this case; and it must be said, we think, that, in the absence of any objection on the part of the defendant, or request for more specific instruction on that point, he must be taken to have been satisfied with what was said on that subject in the charge. No request was made of the court to make any other or different charge upon that point, nor did the defendant complain of the charge as it was made. Indeed, he does not complain of it now. In a general way, the jury had the proper rule stated to them; and, if the defendant wished to have it stated in any other way, he should have made a request for such change. As he did not do so, it is too late to complain of it at this time.

The court charged the jury that it was for them to say whether there was an express warranty of quality of the goods, but that they were not at liberty from the testimony to find that there was any implied warranty. To this the defendant excepted. This exception was clearly not well taken, as it would have been perfectly correct for the judge to have charged the jury that there was no warranty, either express or implied. As he did not do so, but submitted to them the question, and they found correctly upon it, the defendant has no ground to complain.

The defendant excepted to that portion of the charge in which he claimed the judge said that, by using the goods, the defendant waived the warranty. Undoubtedly, if there had been a warranty in the case, it would not have been waived by using the goods; but the buyer might have brought his action for damages for breach of the contract of the warranty, although he had received, accepted, and used the property sold. But the charge as made in that regard, although it was not correct as applied to a warranty, was correct as applied to the facts of this case; and, for the reasons above stated, we do not think that the defendant is in any situation to make the objection that it should have been more particular or specific.

We have examined the other exceptions taken upon the trial. None of them appear to be of importance, and the judgment and order must be affirmed, with costs to the respondent. All concur.