(39 App. Div. 218.)

### REYNOLDS v. MAYOR, LANE & CO.

(Supreme Court, Appellate Division, Fourth Department.    March 22, 1899.)

1. PRINCIPAL AND AGENT—SALES—AGENT'S AUTHORITY—IMPLIED WARRANTY.
    An agent to sell property, in the absence of express limitations of his powers, is authorized to make any declaration regarding the property necessary to effect a sale, and usually incidental thereto; and declarations thus made, if within the scope of his authority, are binding on the principal, though the sale was not concluded until a subsequent day.

2. SAME—IMPLIED WARRANTY—PLEADING.
    Where the evidence was sufficient to establish an implied warranty in a sale of manufactured goods designed for a particular purpose, the case may be properly submitted to the jury on that issue, though plaintiff declared on an express warranty.

3. SAME—MANUFACTURED ARTICLE—PLEADING—LATENT DEFECTS.
    A seller of a manufactured article, who is not the manufacturer, whom the seller directed to ship the goods direct to the buyer, without examination by the seller, does not impliedly warrant such article free from latent defects, and fit for the purpose intended.

Appeal from trial term, Monroe county.

Action by James Reynolds against Mayor, Lane & Co. for a breach of warranty. From an order denying a motion for a new trial after verdict for plaintiff, defendant appeals. Reversed.

In 1896 Barr, Reynolds & Co. were co-partners, and as such were carrying on the business of plumbers at the city of Rochester; the plaintiff being a member of that firm. The defendant, a corporation, was at the same time doing business at the city of New York, as a jobber in plumbers' supplies; and one Robert T. Eddy was its agent and traveling salesman. In March, 1896, the plaintiff's firm required certain articles and materials in order to complete an important contract which they had for the plumbing and other work upon an apartment house which was in process of erection at the city of Rochester; and on the 23d day of the month they entered into negotiations with Eddy, as the defendant's agent, to purchase the same,—telling him that their job "was very particular, being done for a man that wanted good work, and he wanted a first-class job." Among other articles desired for the purposes of this contract were some tanks for water-closets, and a preference was expressed by one of the firm for what was known as the "Clinton tank." Eddy stated that the defendant did not sell that tank, but that he could furnish one equally good, made by Louis Lipp & Co., of Cincinnati. Thereafter, and on the 2d day of April following, Barr, Reynolds & Co. mailed the defendant an order which included, among other things, eight water-closet tanks. No particular tank was specified, but at the end of the order was added the direction, "Make no mistake about quality." The defendant, however, ordered the tanks of Lipp & Co., who thereafter shipped the same to Barr, Reynolds & Co., and sent a bill therefor to the defendant. In course of time the tanks

were placed in position in the building for which they were purchased, and it was then discovered that they failed to work, by reason of some latent defect; and after a somewhat protracted correspondence between Barr, Reynolds & Co. and the defendant, the tanks were taken down, and others substituted in their place. The uncontradicted evidence tends to show that the sale of the tanks was accomplished by a warranty by Eddy as to their quality; that, had they answered such warranty, they would have been worth $4.25 each, but that by reason of their defective condition they were worth little or nothing; and on the 21st day of June, 1897, the plaintiff, as the assignee of Barr, Reynolds & Co., brought this action to recover damages for a breach of warranty.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

James M. E. O'Grady, for appellant.
P. M. French, for respondent.

ADAMS, J.   That the firm of which the plaintiff was a member was induced to purchase the goods in question in consequence of representations as to their character and quality made by the defendant's agent is not denied; and that there was a breach of the warranty thus made is a fact as to which there is but little, if any, controversy.   It follows, therefore, that the particular cause of action set out in the plaintiff's complaint was established, provided the plaintiff's assignors had any right to rely upon an express warranty made by the agent of the defendant.

It is a well-settled rule of law that an agent authorized to sell property, in the absence of any express limitations of his powers, is authorized to do any act or to make any declaration in regard to the property which may be necessary to effect the sale thereof, and which is usually incidental thereto, and that declarations thus made by an agent while negotiating for the sale of property, if within the scope of his authority, are binding upon his principal, although the bargain is not concluded until a subsequent day.   Ahern v. Goodspeed, 72 N. Y. 108; Wait v. Borne, 123 N. Y. 592–604, 25 N. E. 1053; Cafre v. Lockwood, 22 App. Div. 11, 47 N. Y. Supp. 916. There is no proof in this case that the defendant's agent had any express authority from his principal to warrant the goods purchased by the plaintiff's firm; but it does appear from certain letters of his which were written to, and put in evidence by, the defendant, that he had always assumed to guaranty the goods sold by him, and that such was the universal custom of dealers in the particular class of goods known as "plumbers' supplies."   We think, therefore, that upon this state of facts the jury might have found that the right of Eddy to warrant the tanks sold by him to Barr, Reynolds & Co. was incidental to the contract of sale, and therefore binding upon his principal.   But the defendant, in order to meet any evidence of such authority, attempted to show that, in making the representations he did as regards the character and quality of the Lipp tanks, Eddy acted in violation of express instructions given him by the defendant, whereupon the trial court, of its own motion, eliminated from the case all evidence of an express warranty, and thereafter submitted it to the jury upon the theory that it was one in which a warranty might be implied from the fact that the articles sold

were manufactured articles, and designed for a particular purpose.

If the evidence in the case was sufficient to establish an implied warranty, within the rule thus invoked by the trial court, the case was doubtless properly submitted upon that theory, although the plaintiff had declared upon an express, and not an implied, warranty. Hoe v. Sanborn, 21 N. Y. 552; Bierman v. Mills Co., 151 N. Y. 482–488, 45 N. E. 856. We think, however, that the evidence was not such as would warrant a recovery upon the theory upon which the case was submitted to the jury. The property which was the subject-matter of the contract between the plaintiff's firm and the defendant, it may be assumed for the purposes of this review, was not in existence at the time the contract was entered into. At all events, it consisted of manufactured articles which were designed for a particular purpose; and, had they been manufactured by the defendant, the law would probably permit a guaranty, by implication, that they were free from any latent defect arising out of the process of manufacture, and that they would answer the purpose for which they were especially designed. Hoe v. Sanborn, supra; Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422; Bierman v. Mills Co., supra. The principle last asserted forms an exception to the general rule of caveat emptor, and it is founded upon the presumption that the manufacturer of an article, being familiar with the process of its manufacture, knows or ought to know what latent defects, if any, exist therein; and this presumption, it has been truly said, "is justified in part by the fact that the manufacturer or maker by his occupation holds himself out as competent to make articles reasonably adapted to the purpose for which such or similar articles are designed." Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537. The reason for the rule above referred to obviously excludes the idea that it has any application to property sold which was not manufactured by the seller, for in such a case it would be unreasonable to assume that the seller had any other or better opportunity to know of the existence of a latent defect than had the purchaser. The case under consideration furnishes perhaps as apt an illustration of the distinction we are seeking to draw as can well be found. The defendant was not a manufacturer of, but a dealer in, a particular class of goods. Its place of business was in the city of New York. In order to comply with the requirements of a customer, an order for the articles desired by him was sent to the manufacturer thereof in the distant city of Cincinnati, and some time thereafter the articles thus ordered were sent directly by the manufacturer to the defendant's customer at Rochester. Thus, it will be seen that the defendant not only had nothing whatever to do with the manufacture of the articles sold, but that it never even saw them. In these circumstances, with what propriety can it be assumed that the defendant was so familiar with the process of manufacture of these articles as to be aware of the existence of some latent defect therein? Or upon what principle of justice can it be held that, because the articles were designed for a particular purpose, they were sold under an implied warranty that they were adapted to that purpose? We find no authority for such a prop-

osition, but, upon the contrary, the cases are numerous which hold that, to bring a party within the rule adopted by the trial court, he must be the manufacturer as well as the seller of the property sold. Hoe v. Sanborn, supra; Bartlett v. Hoppock, 34 N. Y. 118; Dounce v. Dow, 64 N. Y. 411; White v. Miller, 71 N. Y. 118; Wait v. Borne, supra; Carleton v. Lombard, Ayres & Co., supra; Bierman v. Mills Co., supra; Bridge Co. v. Hamilton, supra; Cafre v. Lockwood, supra.

If we are correct in the views thus far expressed, it will be unnecessary, as well as unprofitable, to consider the subtle refinements of the common law to which the learned counsel for the respondent has resorted in order to sustain his contention that the question of implied warranty may, in the circumstances of this case, be one of fact, and not of law; for, if the case was tried and submitted to the jury upon an erroneous theory, a new trial ought to be had, in order that the parties may litigate the action upon a true theory, and the one tendered by the complaint, viz. that the defendant's liability arises out of an expressed, and not an implied, warranty.

Order reversed, and a new trial directed, with costs to the appellant to abide the event. All concur.