PRENTICE v. FARGO.

(Supreme Court, Appellate Division, Fourth Department.   July 24, 1900.)

1. SALES—IMPLIED WARRANTY—BREACH.

The fact that, defendant, in selling seed wheat to plaintiff, stated that plaintiff might have it for 90 cents per bushel if he would take it "just as it is," or "just as it is, without cleaning," did not relieve him from liability on his implied warranty that it was suitable for sowing, but evidently had reference only to its unclean condition.

2. SAME—LATENT DEFECTS.

Where defendant sold to plaintiff certain seed wheat, which he had raised and harvested, he impliedly warranted that there were no latent defects arising from the manner of cultivation, harvesting, and storing it; and where it appeared that the seed had been wet, and thereby injured, this constituted a breach of implied warranty, for which plaintiff was entitled to recover.

McLennan, J., dissenting.

Appeal from trial term, Wyoming county.

Action by William W. Prentice against Palmer G. Fargo for breach of warranty in sale of 30 bushels of seed wheat. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

E. E. Charles, for appellant.

John L. Woodworth, for respondent.

LAUGHLIN, J.   This is an action for damages on account of a breach of warranty in the sale of seed wheat.   It appeared by uncontroverted testimony that the defendant raised the wheat, and sold it to plaintiff for seed grain.   The evidence presented on the part of the plaintiff tended to show that the grain became wet while being harvested, which caused it to heat, and rendered it unreliable and unsuitable for seeding, all of which was known to defendant.   This was controverted by defendant, and presented questions of fact for the jury.   The trial court instructed the jury that no recovery could be had unless they found a breach of an express warranty, and declined to charge that there was an implied warranty that the grain was suitable for the purpose for which it was sold.   Plaintiff's exceptions to this charge and to the refusal to charge as requested present the only questions arising on this appeal.   Their determination requires a consideration of the pleadings and evidence.   The complaint alleges that on the 2d day of October, 1897, plaintiff purchased about 30 bushels of wheat of defendant, "which defendant warranted and represented was good number seven winter wheat, fit and proper to be sown, and that the same had not been heated or damaged or rendered unfit for sowing, and that the same had not been wet, and that none of it had grown."   It was further alleged that the purchase was made for the purpose of sowing the wheat and raising a crop therefrom, which was well known to defendant; that the wheat had been heated, fermented, damaged, and wet, and some of it had grown before being threshed, and that it was not good and fit to be sown; that plaintiff relied upon "said warranty and representations," and believed them to be true,

and sowed 28 bushels of the wheat, but that, in consequence of the premises, said sowing yielded only 180 bushels and a small quantity of straw, whereas, if the grain had been as "represented and warranted," it would have yielded over 600 bushels and 15 tons of straw; and that plaintiff has suffered damages in the sum of $350. Plaintiff testified that about the 20th of September, 1897, he had a talk with defendant on the subject of purchasing of him some seed wheat, and defendant recommended No. 7, and said that he had plenty; that he called at defendant's house, and, not finding defendant home, looked at the wheat through the granary door, but did not examine it, and then met defendant on the road and had a conversation, which plaintiff narrates as follows:

"I told him I had been down to his house to buy some wheat for seed, and he wanted to know how much I wanted. I told him I wanted enough to clean up thirty bushels; that we thought we had fifteen acres to sow. It would take more than that, of course, to clean up and make thirty. And I asked him if he would not let me have it the same as he was selling his wheat for at the mill, and he said he would if I would take it just as it was. I said, 'That is ninety cents, is it not?' He said, 'Ninety-five.' I said, 'I thought ninety cents was the most they were selling for,' and, after a little hesitancy, he says, 'Well, if you will take it just as it is, you may have it for ninety cents,' and I told him I would be down in a few days and get it. * * *"

On cross-examination:

"I told him I had been down to his house to buy some of that wheat, referring to the wheat he was telling about up on the street. He asked how much I wanted, and I told him I wanted to sow fifteen acres,—it would take thirty bushels,—and asked him if he would let me have it right there the same as he was getting for it up at the mill, and he finally said he would. I said, 'That is ninety cents.' He said, 'Ninety-five.' I said, 'I thought ninety cents was the most they were paying at the mill.' He hesitated a few minutes, and then said, 'If you will take it right here, just as it is, without cleaning, you may have it for ninety cents.' I told him I would be down in a day or two and get it. * * * He said, after hesitating some time, I could have the wheat for ninety cents a bushel if I would take it just as it was. * * * He told me he was selling it for a dollar a bushel for seed, cleaned up, and that he was getting ninety-five at the mill."

Plaintiff further testified that on the 2d of October he called for the wheat, and they weighed out 33 bushels and 12 pounds.

Defendant's version of this conversation is as follows:

"He asked what I asked for wheat, and I told him that I had sold seventy-five or eighty bushels at a dollar a bushel, screened and fitted for seed, and he said, 'Wheat ain't worth quite that in the market.' I asked him how much he would want. He said he thought he should want about thirty bushels. He said, 'The seed I get, I want to take to the mill, as I think they can screen it closer than the average fanning mill will do.' I said, 'If you want as much as thirty bushels, and will take it as it is, you may have it for the same I get at the mill,—for ninety cents. He said he would be down to-morrow or Monday; that he had not got his ground quite fitted, but, if he could not come to-morrow, he would come Monday and get the wheat. * * * There was nothing said by either of us in that conversation about ninety-five cents a bushel."

Plaintiff also gave evidence tending to show that, at the time the wheat was delivered, its appearance led him to interrogate defendant as to whether it had been wet or heated,—he at the same time informing defendant that heated grain would not be fit for seed,—and that defendant replied that it had not. This the defendant denied.

There was other evidence, not undisputed, but sufficient to warrant the jury in finding that the grain had been wet and had heated, rendering it unsuitable for use as seed grain; that defendant was aware of these facts; and that in consequence thereof there was a very light crop, and plaintiff sustained substantial damages. Plaintiff only desired 30 bushels to sow 15 acres, and, to clean up that amount, it was evidently considered that it would require several bushels more; for he took, and became obligated to pay at the rate of 90 cents per bushel for, the 33 bushels and 12 pounds.

We think the fair construction of defendant's statement that he would sell for 90 cents per bushel if plaintiff would take it "just as it is," or "just as it is, without cleaning," is that it had reference to the unclean condition of the wheat, and did not relieve the defendant from liability on any implied warranty as to its suitableness for sowing as seed. No election was requested by defendant, or made by plaintiff, as to whether he would stand upon an express or an implied warranty. If the complaint were only susceptible of the construction that it is founded on a breach of an express warranty, still plaintiff might recover for a breach of an implied warranty. Reynolds v. Mayor, Lane & Co., 39 App. Div. 218, 57 N. Y. Supp. 106; Rogers v. Beckrich, 46 App. Div. 429, 61 N. Y. Supp. 725; Hoe v. Sanborn, 21 N. Y. 552; Burch v. Spencer, 15 Hun, 504; Carleton v. Lombard, Ayres & Co., 149 N. Y. 137, 43 N. E. 422; Bierman v. City Mills Co., 151 N. Y. 482, 45 N. E. 856, 37 L. R. A. 799; Sussdorff v. Schmidt, 55 N. Y. 319; Osborn v. Ink Co., 29 Misc. Rep. 648, 61 N. Y. Supp. 70. The defendant having raised and harvested the wheat, and sold it for seed grain, there was an implied warranty that there was no latent defect, arising from the manner of cultivation, harvesting, and storing, that would render it unsuitable for that purpose. White v. Miller, 71 N. Y. 118; Passenger v. Thornburn, 34 N. Y. 634; Van Wyck v. Allen, 69 N. Y. 61. It follows that the exceptions stated were well taken, and the judgment appealed from must be reversed, with costs to the appellant to abide the event.

Judgment reversed and new trial ordered, with costs to the appellant to abide event. All concur, except McLENNAN, J., who dissents.