[Civ. No. 5493.   First Appellate District, Division One.—August 18, 1927.]

CAVE J. COUTS et al., Respondents, v. SPERRY FLOUR COMPANY (a Corporation), Appellant.

Goodfellow, Eells, Moore & Orrick for Appellant.

Louis B. Stanton for Respondents.

TYLER, P. J.—Action for damages for breach of warranty. The allegations of the complaint, in so far as they are necessary for a discussion of the question here involved, recite in substance that on or about the fourteenth day of December, 1922, plaintiffs called upon defendant company with the object of purchasing from it certain seed barley to be used for planting, and defendant thereupon sold the same to them. That prior to such sale defendant represented and warranted that the seed so purchased was a lot of fine San Joaquin grown barley that yielded twenty-five or thirty sacks to the acre, and further represented that it was not Mariout barley, a variety plaintiffs did not desire to purchase. That plaintiffs relied solely upon each of the representations so made in completing the purchase. That acting upon such reliance they planted the same, which in due course grew and matured, at which time it was revealed that the same was Mariout barley. That in consequence plaintiffs' yield was a smaller one than would have been produced with the variety ordered. Damages were prayed for in the sum of $3,150.50. Defendant answering, denied that the barley was sold as seed barley or that any representations or warranties of any kind were made by it with reference to its character or kind. At the trial plaintiff Couts testified, in substance, that he visited defendant's place of business in Los Angeles for the purpose of purchasing wheat and barley for seed purposes. That with reference to the barley he informed defendant's agent that he could not obtain good seed in the vicinity in which he lived as his neighbors had been using the Mariout variety which had proved disastrous, and that he wanted some of the Coast barley, whereupon the agent of defendant assured him the company had "some splendid Coast barley, grown in the San Joaquin, that goes twenty-five to thirty sacks to the acre,"

that he thereupon informed the agent that it was the variety he wished to purchase. He further testified that he explained that his reason for calling on defendant was that he did not want Mariout barley such as had been sown in his neighborhood, whereupon the agent of defendant replied that his company had no Mariout barley, but had the San Joaquin variety. That upon receiving this information he purchased two tons of the represented variety. On the other hand, the agent of defendant, through whom the sale was made, testified that he had informed plaintiff at the outset that his company was not a seed house and would not quote any grain as seed, but would quote a good quality as recleaned grain, and that in his opinion it would be suitable for planting. The price quoted was $1.90 per cwt., at Los Angeles, plus carload freight to Vista, where plaintiff desired it to be shipped. Plaintiff then informed him that he did not want a carload, but only a couple of tons, whereupon he had replied that he ought to obtain it locally. Plaintiff then explained that the local barley was foul with smut and that he did not want it; that he wanted the northern barley. The agent thereupon stated that he was selling him barley that came from the north, meaning north of Los Angeles, but that nothing was ever said by either party about Mariout barley. It also appeared in evidence that defendant did not buy its barley with any reference as to variety, but that all the barley defendant had in its warehouse was placed in separate bins according to quality but without regard to variety. It further appeared that the price of the barley kept by defendant at that time was sold at $1.90 per cwt., f. o. b. Los Angeles, and this was the regular and only price which defendant charged. It was proved that the price charged for barley seed by regular seed houses during the same period was $3.50 per cwt., and that the same was sold without any warranty. Other evidence was to the effect that defendant's salesmen were not permitted in selling seed grain to make any warranties, express or implied, as to quality or description, but that the same was simply sold as recleaned grain, and inventoried by the company as such. Upon this evidence the court found that at the time the sale of the barley by defendant to plaintiff was made plaintiff especially informed defendant that he did not want Mariout barley. It further found that at this time

defendant notified plaintiff that it was not a seed house, but had for sale northern grown barley which could be used for seed and thereby intended that plaintiff should understand that no warranty would be made as to said barley for seed purposes, but that defendant understood that the barley was not Mariout barley. Further findings recite that defendant knew that all of the barley which it had for sale was not segregated according to variety, and defendant's agent did not know whether or not the variety which it offered plaintiff was or was not Mariout barley, and that he did not disclose such fact to plaintiff, who bought the barley in ignorance thereof, upon his understanding that it was not the objectionable variety. Upon these findings the court rendered judgment in favor of plaintiff for damages in the sum of $1,075.20. It is appellant's contention that the court having found that defendant had warned plaintiff of its intention not to warrant the seed, that this finding based upon the undisputed evidence to this effect, precludes a conclusion that there was a warranty, either express or implied, as to the quality or variety of the barley. The question of warranties in the sale of seed is exhaustively discussed in the recent case of *Miller* v. *Germain Seed & Plant Co.*, 193 Cal. 62 [32 A. L. R. 1215, 222 Pac. 817]. It is there said that there can be no question where a purchaser asks a seed dealer for a certain variety of seed and in pursuance of that request seed is furnished, in the absence of any additional facts the law will, from the transaction, imply a contract of warranty and that such warranty partakes of the nature of both an express and implied warranty. But in order that a sale shall be upon a warranty there must be two factors present,—first, an affirmation of a fact by the seller with reference to the thing sold,' and, second, an intention on the part of the seller that his affirmation shall be a warranty to the buyer. The affirmation of the fact is shown by direct evidence, and the intent to warrant is inferred from the facts and circumstances surrounding the sale. In the case of the sale of seed for planting, the description of the seed by the seller is an affirmation of a fact concerning the thing sold. From the fact that the seed is sold for planting and the description of the seed is, therefore, a vital element in the contract, the intent on the part of the dealer to warrant that vital fact to the buyer is inferred. ▮ Here, the

court having found that the seller expressly refused to warrant the seed, there is no room for any question of an implied warranty in connection with the sale. By the express declaration of the agent, and upon which the finding is based, defendant relieved itself of any implied warranty that the seed sold was of the variety desired. (*Leonard Seed Co.* v. *Crary Canning Co.,* 147 Wis. 166 [Ann. Cas. 1912D, 1077, 37 L. R. A. (N. S.) 79, 132 N. W. 902].) ▮ Such a refusal shows an intention that the buyer shall take the risk of the goods (2 Williston on Contracts, p. 1871; 35 Cyc. 373). Respondent insists in support of the judgment that from the findings as a whole it is clear that there was an express warranty given by appellant to respondents that the sale was of barley seed not of the Mariout variety. While the findings do establish the fact that plaintiffs did not want the variety furnished they also establish the further fact that defendant expressly refused to warrant the seed. As above indicated, in order to recover upon a warranty there must be two factors present,—first, an affirmation of fact by the seller with reference to the thing sold, and, second, an intention on the part of the seller that his affirmation shall constitute a warranty. An express finding, as here, that the seller absolutely declined to warrant, negatives the existence of any implied warranty arising from the facts surrounding the sale, and the mere fact that plaintiffs made their purchase upon the understanding that the seed was not the objectionable variety, and that they never understood that defendant did not intend to warrant, does not alter the rule. (*Miller* v. *Germain Seed & Plant Co., supra.*) ▮ As argued by appellant, the finding of the lower court to the effect that there was no intent to warrant on the part of the seller finds full support in the evidence, for, aside from the direct testimony of the agent of defendant upon the subject, it was disclosed that defendant did not sell any barley as seed, but merely sold the same as reclaimed grain; that its barley sold for $1.90 per cwt., whereas at the same time seed houses selling barley as seed charged $3.50 per cwt., and even at that price no warranty was given. We conclude, therefore, that the facts and circumstances surrounding the sale cannot support the finding of an implied or any warranty in face of the finding that defendant's agent ex-

pressly refused to warrant. This express finding negatives any idea of warranty.

For the reason given the judgment is reversed.

Knight, J., and Cashin, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 17, 1927.