[Civ. No. 6314. First Appellate District, Division Two.—October 10, 1928.]

THE WILLIAM A. DAVIS COMPANY (a Corporation), Respondent, v. BERTRAND SEED COMPANY (a Corporation), Appellant.

Fred L. Dreher and J. Ed. McClellan for Appellant.

Morrison, Hohfeld, Foerster, Shuman & Clark for Respondent.

BUCK (G. F.), P. J., *pro tem.*—Action by buyer to recover back from seller the purchase price of certain garden seeds because of alleged breach of certain warranties, claimed to have been given by seller at time of the sale.

The case was tried by the court sitting without a jury and the court found that at the time of the sale the defendant represented to and assured the plaintiff that the seeds sold were of certain specified varieties, to wit: "Alaska Variety" and "Hosford Market Garden Variety"; and that, relying upon said representations, the plaintiff received the seeds and paid the purchase price. The court also found on conflicting evidence that as a matter of fact the seeds were not of the "Alaska" and "Hosford" varieties; and that as soon as such fact was discovered plaintiff offered to return the seeds, and demanded the return of the purchase price and certain charges paid on account of the transaction.

Judgment was accordingly given for plaintiff, and defendant appealed.

One of the grounds of the appeal is that the evidence is insufficient to sustain finding that the defendant intended or manifested any intent to give the warranty charged or found; but that, on the contrary, the writing relied upon by the plaintiff to prove the warranty expressly shows that the defendant disclaimed any intent or purpose to give the warranty relied upon by the plaintiff.

The plaintiff and defendant corporations were wholesale seed dealers, the plaintiff being located in Montana and the defendant in California. The contract of sale relied upon and proven by the plaintiff was created by the plaintiff's acceptance of the following written offer:

"San Francisco, Cal., July 3rd, 1919.

"The William A. Davis Co.,

"Bozeman, Montana.

"While we exercise great care to have all our seeds pure and reliable, we give no warranty, expressed or implied, as to description, quality, productiveness or any other matter of any seeds we sent out, and we will be in no way responsible for the crop. If the purchaser does not accept the goods on these terms, they are at once to be returned.

"Gentlemen:

"We are in receipt of your favor of June 27th and in reply are pleased to quote you the following varieties of garden peas: (Here follow quotations, among others—Hosford Market Garden $.12 per lb. and Alaska Peas at $.14)

"The stocks offered are all choice seedsmens stocks and double milled. Prices are f. o. b. San Francisco, terms sight draft attached to bill of lading with privilege of inspection. Bags extra at cost. This offer is for immediate acceptance and is subject to stock being unsold upon receipt of your order.

"Trusting that we may have the pleasure of booking your order for some of these varieties, we remain,

"Yours very truly,

"BERTRAND JOHANSEN SEED CO.,

"Per A. A. BERTRAND."

The portion above between the words "Montana" and "Gentlemen" was in print while the remaining portions of the body of the letter were in typewriting.

■ It is plaintiff's and respondent's contention that notwithstanding the foregoing matter in print, which by its terms disclaims any intent on the part of the seller to give any warranty, ''express or implied as to description, quality, productiveness, or any other matters, of any seeds,'' nevertheless, by reason of other language in the letter, such express intent was absolutely nullified and abandoned.

And, first, as to the printed disclaimer: At the outstart it should be noted that there is no attempt made to plead or find fraud, or to put the defendant upon any defense as to fraud. Furthermore, the general rule as to the binding effect of ''a statement printed upon a letterhead or tag upon goods, or in some other paper delivered to the acceptor'' is well stated by Williston in his work on Contracts, volume 1, page 165, paragraph 90d, as follows: ''The sole question seems to be whether the facts present a case where the person receiving the paper should, as a reasonable man, understand that it contained terms of the contract which he must read at his peril, and regard as part of the proposed agreement. The precise facts of each case are important in reaching a conclusion.'' Citing many cases. See, also, 1 Williston on Sales (2d ed.), par. 239a, and cases cited at page 477.

■ In the case at bar the facts unequivocally show the plaintiff corporation was well aware both of the contents and the purpose and intent of the printed matter, as well as of its effect as a disclaimer. Throughout the correspondence between the parties the disclaimer appeared in every letter received by the plaintiff from the defendant; and as disclosing the extent to which the defendant recognized its binding effect as a disclaimer, the final exchange of courtesies between the parties is quite significant. In the letter of September 28, 1920, from defendant to plaintiff the following appears: ''We are in receipt of your claim against us of the 17th of this month, asking us to take back goods sold you in good faith, and on a high market, which makes your claim altogether out of reason. If, as you say, the peas did not look right to you when they arrived a year ago, that was the time to turn the shipment down, and not now, when the market value of the stock is about one-half of the price at which you bought. We regret that we cannot accept the peas.''

To which plaintiff replied as follows: "Your letter of September 28th was very surprising to us, in so much that after having sold us seed stocks untrue to name and after we had protected you in this transaction, you are entirely unwilling to treat us fairly. Evidently you are one of the numerous firms operating under the protection which they feel the seedman's disclaimer affords them. It is possible that a sound business may be built up under this policy, but we are of the opinion that to continue long in the seed business it is necessary to recognize at least some degree of honor and fair play.

"So as far as your disclaimer is concerned, however, we wish to state that you did not exercise great care to have this seed pure or reliable and we feel it only just that methods such as you have been using should be given prominence and we will take immediate steps to advertise this transaction."

If it be a good rule that a writing is best understood by the construction which the parties themselves place upon it, it is quite evident from the foregoing that the plaintiff, who, by the way, appears in its own business to have used a printed disclaimer on its letter-heads, understood that its proper remedy in this proceeding was not to attack or qualify the disclaimer as such, but to rely rather upon a claim that the defendant was guilty of fraud and breach of "honor and fair play" in the representation that "we exercise great care to have all our seeds pure and reliable." But as already noted, plaintiff's complaint makes no attempt to allege such charges or to give the defendant any opportunity on a fair trial to meet such charges.

The case of *Miller* v. *Germain Seed & Plant Co.*, 193 Cal. 62 [32 A. L. R. 1215, 222 Pac. 817], is an instructive case as to the binding effect of a disclaimer by implication contained in a contract for the sale of garden seeds. In that case the plaintiff was engaged in raising celery for the market, and the defendant was engaged in the sale of seeds and plants. The plaintiff ordered from the defendant "celery seed of the golden yellow celery, California stock." The defendant forwarded two bags of celery seed with the marking "Germain seed Germinate." As a matter of fact, the seeds were of a different variety from the character of the seeds ordered. And as a result thereof the plaintiff recovered damages in the sum of $4,000. The case was tried

before a jury and the defendant seed dealer claimed that in each bag of seed there was inclosed loose leaf slips containing the same nonwarranty notice as was contained in the letter-heads, in the case at bar, and, furthermore, that for a period of fifteen years prior to the commencement of the action the plaintiff at various times purchased seed from the defendants, and in each instance there was inclosed in the package containing said seed a slip upon which was printed the same notice of nonwarranty; also the same notice was printed in defendant's catalog and on its order blanks, and on other stationery used by defendant.

But all this was denied by the plaintiff's witnesses and all disputed facts were passed upon adversely to defendant's contention by the jury. The supreme court, however, reversed the case upon the ground that the trial court erred in refusing "to instruct the jury, as requested by the defendant, that if there was a general custom of nonwarranty the plaintiff would be bound thereby, even if he did not in fact know of such custom and usage." In that case, both in the prevailing and dissenting opinion, the rule was conceded, as it is in the case at bar, that "where a purchaser asks a seed dealer for a certain variety of seed and in pursuance of that request the seed is furnished, that in the absence of any additional facts the law will from the transaction imply a contract of warranty. This warranty partakes of the nature of both an express and implied warranty."

In the case cited, as already indicated, so far as the writings between the parties are concerned, it was found there was no writing, printed or otherwise, between the parties disclaiming the "express and implied warranty" that the seeds were of the variety known as "Golden Yellow Celery California stock." But the court held that the above instructions should have been given so that the jury, if they so found, could as against a farmer purchasing seed for use nullify the foregoing "express and implied warranty" by a mere custom unknown to the buyer himself. And by a parity of reasoning which led the court to arrive at the foregoing conclusion, it would seem to follow that as between two sophisticated wholesale seed corporations an express disclaimer of warranty inserted in their mutual correspondence should have even greater potency as a disclaimer of

warranty than the seed sellers' custom which bound the farmer in the Miller-Germain case.

In the prevailing opinion in the Germain seed case, *supra*, the court cited and followed the case of *Ross* v. *Northrup*, 156 Wis. 327 [144 N. W. 1124], on the potent effect of a general custom, and also cited the case of *Leonard Seed Co.* v. *Crary Canning Co.*, 147 Wis. 166 [Ann. Cas. 1912D, 1077, 37 L. R. A. (N. S.) 79, 132 N. W. 902], which was also a case from the same jurisdiction, upholding the potent effect of a provision of nonwarranty, "very similar to the provision which it is alleged in the instant case" which was printed not on a mere slip inclosed in a bag, but printed in the body of a letter read and understood by the buyer himself.

■ Furthermore, as regards respondent's claim that in the face of the nonwarranty clause the following language is sufficient to show an intent on the part of the seller to give an express warranty as to variety and purity: "The stock offered was all choice seedmen's stock and double milled." As shown at page 103 of 193 Cal. [222 Pac. 833] of the dissenting opinion in the case of *Miller* v. *Germain Seed etc. Co., supra,* statements of much stronger import were contained in the seller's printed catalog, and were evidently not considered by the court of sufficient import to nullify the effect of a mere custom. And in the case at bar the language relied upon should be and can be construed in a reasonable sense which will preserve and not do violence to the plain meaning of the express language of the nonwarranty clause; and be construed simply in connection with the statement touching care in selection and expressive merely of an opinion in good faith as to the general merits of the defendant's stock in trade.

■ The case of *Miller* v. *Germain Seed etc. Co.* was followed in the recent case from this district of *Couts* v. *Sperry Flour Co.*, 85 Cal. App. 156 [259 Pac. 108]. This case is conclusive authority as to the proposition that: "In order that a sale shall be upon a warranty, there must be two factors present; first, an affirmation of a fact by the seller with reference to the thing sold, and, second, an intention on the part of the seller that his affirmation shall be a warranty to the buyer," and in the case last cited it was held that: "By the express declarations of the agent,

and upon which the finding is based, defendant relieved itself of any implied warranty that the seed sold was of the variety desired." Citing *Leonard Seed Co.* v. *Crary Canning Co.*, 147 Wis. 166 [Ann. Cas. 1912D, 1077, 37 L. R. A. (N. S.) 79, 132 N. W. 902]; also, 2 Williston on Contracts, p. 1870; 35 Cyc. 373.

■ But it is respondent's contention that after the receipt and acceptance of the goods and the payment of the price the defendant made certain written statements in its correspondence with the plaintiff which constituted a warranty. But in the first place each and every one of those statements relied upon was contained in a letter which contained also the printed disclaimer of warranty and there was evidently no intent expressed to give a warranty, and, furthermore, there was no consideration received or accepted which would sustain any new or additional warranty for goods already sold and delivered. ■ In fact, as stated in Williston on Sales, second edition, volume 1, paragraph 211: "If the seller's liability on a warranty is based upon an agreement to contract, consideration is essential . . . still more clearly if no representation of warranty was made at the time of the sale, a subsequent representation or agreement to warrant will be of no legal effect, unless new consideration is given to it." Citing many cases.

It will therefore not be necessary to consider the other points made by appellant herein for the reason that from the foregoing it sufficiently appears from the writing relied upon by the plaintiff to prove an intent to warrant that the defendant expressly disavowed and disclaimed any such intent.

The judgment will, therefore, be reversed.

Nourse, J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 26, 1928, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 6, 1928.

All the Justices concurred.