THEODORE LUMBRAZO, Respondent, *v.* S. D. WOODRUFF and Others, Appellants.

Third Department, May 8, 1930.

*Wager, Griffith & Wager* [*R. J. Woodruff* of counsel], for the appellants.

*R. R. Calli* [*R. D. Woolsey* of counsel], for the respondent.

DAVIS, J. The plaintiff is a farmer at Canastota engaged in raising onions. The crops are raised from onion sets purchased from seedsmen. In 1926 plaintiff had obtained Japanese sets from defendant and raised a good crop. In the fall he gave an order to the same agent for 300 bushels for 1927 planting. The order (disregarding immaterial parts thereof) was in the following language:

" Ship to Theodore Lumbrazo at Canastota, N. Y., 1927.

" We give no warranty, expressed or implied as to description, quality, productiveness, or any other matter, of any seeds sent out and will be in no way responsible for the crop and the purchaser hereby waives the right of refusal and return of goods which is usually connected with the non-warranty.

" Contract order — all items. This order is not subject to countermand.

" 300 Bu. Jap O Sets   *   *   *   Time      3.50

   " (Signed) Theodore Lumbrazo "

It was all in print except that the words " 300 Bu. Jap O Sets *   *   *   Time 3.50 " (meaning $3.50 per bushel when sold on credit) were written in pencil by the agent. The sets were delivered about March 25, 1927, and the plaintiff gave his promissory note in payment.

There is no dispute that Japanese sets differ from other onion sets in that in growing they run less to seed stalks and produce a larger and better crop; and that it is practically impossible to determine by an inspection whether they are true to the designated variety. This can only be determined after they have been growing for some time.

The plaintiff planted 200 bushels of the sets. The results were that an unusual number of seed stalks developed and he had a poor crop. This action is for breach of warranty for failing to deliver Japanese onion sets as ordered. There is no claim of fraud or deceit. It appears that the defendants had caused these sets to be raised by a grower from seed they had furnished; and there is no question as to their good faith in believing them to be of the variety actually ordered. There was dispute on the trial whether the sets were of the Japanese variety. The question has been

determined in favor of plaintiff upon sufficient evidence. The appellants here contend that the non-warranty clause precluded recovery by plaintiff; and that there was error in the measure of damages submitted.

The appellants argue that the disclaimer of warranty is so complete that even if the sets were not the Japanese variety, the defendants were absolved from all liability. There are respectable authorities in other jurisdictions sustaining this contention, where, under similar contracts for the sale of seeds, the disclaimer has been given full effect. (See *Leonard Seed Co.* v. *Crary Canning Co.*, 147 Wis. 166; *Kibbe* v. *Woodruff*, 94 Conn. 443; *Seattle Seed Company* v. *Fujimori*, 79 Wash. 123; *Larson* v. *Inland Seed Company*, 143 id. 557; *Couts* v. *Sperry Flour Co.*, [Cal.] 259 Pac. 108; *Davis Company* v. *Bertrand Seed Company*, [Cal.] 271 id. 123; *Miller* v. *Germain Seed & Plant Co.*, 193 Cal. 62; *Blizzard Bros.* v. *Growers' Canning Co.*, 152 Iowa, 257.) The general theory of these cases is that where seed is sold for a comparatively small price, the seller cannot be expected to guarantee the results of a crop and thereby become liable for damages to a large amount; and, therefore, it is perfectly legitimate that the seller should disclaim any warranty.

We find no authority in this State on the precise question presented here, although the trend of decisions, as will presently be stated, is not in accord with the rule above stated. Very likely the difference arises in varying views of the doctrine of *caveat emptor*. Early cases in England and in this State held the buyer to a very strict rule. Losses due to latent defects unknown to both parties fell upon the buyer after acceptance. (*Chandelor* v. *Lopus*, Cro. Jac. 4; *Seixas* v. *Woods*, 2 Caines, 48; *Swett* v. *Colgate*, 20 Johns. 196.) This rule was later definitely overruled. (*White* v. *Miller*, 71 N. Y. 118; Pers. Prop. Law, §§ 93, 95.) To accept the views of appellants on the non-warranty would lead to a result in this case highly unreasonable. The claim of the appellants amounts to this: Knowing that the plaintiff desired Japanese onion sets similar to those previously purchased, the agent could write in the kind desired, charging the full price for that variety; the order could be shipped and the plaintiff's note taken therefor, the defendants could make delivery of any variety of bulbs not even those of onions, and their disclaimer would prevent the plaintiff from rejecting or returning them and he would be bound to pay the full price. No particular form of words is essential to a warranty. It is a question of the intention of the parties. There can be no doubt that the plaintiff intended to order Japanese onion sets and the defendants to fill that order. The disclaimer,

as properly charged by the learned trial court, related to the description, quality and productiveness of the sets. If Japanese sets were defective in quality, not fertile and failed to produce a good crop, the seller was exonerated. But the fundamental obligation was to deliver Japanese onion sets. That was clearly the intent of both parties. This the defendants failed to do. There was a sale by description and the warranty was probably express (Pers. Prop. Law, § 93), at least from the relation and intent of the parties, a warranty was implied. (Id. § 95; *White* v. *Miller, supra; Van Wyck* v. *Allen*, 69 N. Y. 61; *Prentice* v. *Fargo*, 53 App. Div. 608; affd., 173 N. Y. 593; *Depew* v. *Peck Hardware Co.*, 121 App. Div. 28; affd., 197 N. Y. 528.) The construction contended for by defendants, as we have stated, " ' would make the contract unreasonable and place one of the parties at the mercy of the other.' " (*Sanford* v. *Brown Brothers Co.*, 208 N. Y. 90, 96, citing *Schoellkopf* v. *Coatsworth*, 166 id. 77, 84.) We will not give an interpretation to this contract leading to such an unreasonable and unjust result.

Varying forms of contracts for the sale of seeds or trees have received interpretation in this State. Regardless of the language used, it has been held that the type or kind of seeds or trees delivered must correspond to those ordered; and that disclaimers will be strictly construed against the seller whether the warranty of kind be express or implied. (*Passinger* v. *Thorburn*, 34 N. Y. 634; *Van Wyck* v. *Allen, supra; White* v. *Miller, supra; Gubner* v. *Vick*, 6 N. Y. St. Repr. 4; *Prentice* v. *Fargo, supra; Landreth* v. *Wyckoff*, 67 App. Div. 145; *Depew* v. *Peck Hardware Co., supra; Sanford* v. *Brown Brothers Co., supra.*) The rule seems to be different where noxious seeds are commingled with those sold and the contract disclaims warranty. (*Bell* v. *Mills*, 68 App. Div. 531; but see same case, 78 id. 42.) On a sale by description liability depends much on whether inspection will disclose defects. (*Lichtenstein* v. *Rabolinsky*, 98 App. Div. 516; affd., 184 N. Y. 520; *Stroock & Co., Inc.*, v. *Lichtenthal, Inc.*, 224 App. Div. 19.) There are decisions in other jurisdictions in harmony with the general doctrine in this State that seeds must be true to description. (See *Wolcott* v. *Mount*, 38 N. J. L. 496; *Gardner* v. *Winter*, 117 Ky. 382; *Vaughan's Seed Store* v. *Stringfellow*, 56 Fla. 708; *Frith* v. *Hollan*, 133 Ala. 583.)

It is unimportant whether we consider the pencil writing an express warranty, an implied warranty or a condition. Varying views are entertained in different jurisdictions as to the proper legal term. (See note, 37 L. R. A. [N. S.] 79.) The English rule seems to be in accord with that prevailing here. There must be delivery of the kind of seeds ordered unless the non-warranty clause

is specific. In other words, the seed must be true to name. It is regarded not as a breach of warranty but of a condition.

In *Howcraft* v. *Laycock* (14 Times L. R. 460) the order was for a species of cabbage seed called "Couve Tronchuda." The seeds sent, when they grew up, turned out to be Jersey kale, a species of tree cabbage of little value. There was a non-warranty clause in the order which read that the sellers "give no warranty express or implied as to condition, quality, productiveness or any other matter connected with the seeds they send out and they will not be in any way responsible for the crop. If the purchaser does not accept the goods on these terms, they are at once to be returned." Said Mr. Justice DAY: "The clause in question could not be construed to mean that no action should be brought. When Couve Tronchuda was ordered, the seed sellers were not entitled to deliver something quite different. The custom of a trade might qualify a contract, but it could not destroy it. A rational construction must be put on the words relied upon. The construction desired by the respondents to be established, was unreasonable."

In *Wallis* v. *Pratt & Haynes* (L. R. [1911] A. C. 394) there had been a sale of seeds with a non-warranty clause in the contract similar to the one here considered. The seed sold was "common English sainfoin," but the seed delivered was "giant sainfoin," a different and inferior seed. The purchaser accepted the seed without knowledge of the kind delivered but believing it to be of the variety ordered. There was no doubt that both parties intended that "common English sainfoin" seed should be delivered. LORE-BURN, L. C., said: "If a man agrees to sell something of a particular description, he cannot require the buyer to take something which is of a different description, and a sale of goods by description implies a condition that the goods shall correspond to it. But if a thing of a different description is accepted in the belief that it is according to the contract, then the buyer cannot return it after having accepted it; but he may treat the breach of the condition as if it was a breach of warranty, that is to say, he may have the remedies applicable to a breach of warranty * * *. There is no doubt that when you are dealing in a commodity, the inspection of which does not enable you to distinguish its exact nature, there are risks both on the buyer and on the seller if they think fit to sell by description. But if it is desired by a seller to throw the risk of any honest mistake onto the buyer, then he must use apt language and I should have thought the clearer he tries to make the language the better."

Our conclusion is that the defendants were required to deliver Japanese onion sets, and in default thereof became liable in damages. Apt language was not used to limit liability.

As to the amount of damages, the rule was early stated in *Passinger* v. *Thorburn* (*supra*) that the damages would be the value of a crop such as would ordinarily have been produced that year, deducting the expense of raising the crop and also the value of the crop actually raised thereon. This rule was followed in *Van Wyck* v. *Allen* (*supra*). But in *White* v. *Miller* (*supra*) the doctrine in the *Passinger* case as to the measure of damages was stated: " The plaintiff was entitled to recover the difference in value between the crop raised from the defective seed, and a crop of Bristol cabbage, such as would ordinarily have been produced in the year in which the seed was to be sown." The nature of the proof to be made was stated as follows: " The character of the season, whether favorable or unfavorable for production; the manner in which the plants set were cultivated; the condition of the ground; the results observed in the same vicinity where cabbages were planted, under similar circumstances; the market value of Bristol cabbages when the crop matured; the value of the crop raised from the defective seed; these, and other circumstances, may be shown to aid the jury, and from which they can ascertain approximately the extent of the damages resulting from the loss of a crop of a particular kind." In the same case again on appeal (78 N. Y. 393) it was said: " The rule of damages, as laid down by the trial judge in his charge to the jury, was in conformity with the decision of this court when the case was here upon a prior appeal (71 N. Y. 118) — the difference in value between the crop actually raised from the seed sown and a crop of Bristol cabbage, such as would ordinarily have been produced that year." To like effect are *Gubner* v. *Vick* (*supra*) and *Depew* v. *Peck Hardware Co.* (*supra*). In *Landreth* v. *Wyckoff* (*supra*) the literal rule laid down in the *Passinger* case was followed. It seems that we have in this State two rules: One in which the expense of raising the crop must be deducted; and another where that item is left out. We think that in this case the rule adopted by the trial court was correct, to wit, the difference in value between the two crops. There is nothing in the evidence to indicate that the expense of raising a good crop would be more than that of raising a poor crop. So when the difference in the value of the two are compared, the element of expense has been the same. There would be a duplication of items of deduction if both the expense of production and the value of the crop raised were allowed. Furthermore, the defendants were permitted by stipulation during the trial to set up as a counterclaim the note given for the purchase price. In the charge the jury was instructed that the defendants were entitled to recover the amount of the note and interest; and in measuring the damages that amount

must be deducted from the damages allowed plaintiff, if the latter exceeded the counterclaim. Evidently the jury followed the instruction, for the verdict was but $378.64, much less than the plaintiff had established by his proof. The appellants cannot complain of the result. There was no exception or request on the question of damages.

The judgment should be affirmed, with costs.

HINMAN, Acting P. J., WHITMYER, HILL and HASBROUCK, JJ., concur.

Judgment affirmed, with costs.