William F. DONNELLY and Kenneth Zappettini, doing business as Donnelly and Zappettini, a copartnership, Plaintiffs,

v.

GOVERNAIR CORPORATION, a corporation, et al., Defendants.

No. 34716.

United States District Court
N. D. California, S. D.
Oct. 23, 1956.

M. M. Smith, San Francisco, Cal., for plaintiffs.

Chickering & Gregory, by John P. Macmeeken, San Francisco, Cal., for defendants.

HARRIS, District Judge.

Plaintiff, Donnelly and Zappettini, is a partnership engaged in contracting, installing, maintaining and repairing refrigeration systems and equipment. Defendant, Governair Corporation, manufactures certain refrigeration equipment in its plant in Oklahoma. This action arises by reason of plaintiff's contention that defendant breached a contract arising out of the sale of three air handling units and an evaporative condenser.

On April 19, 1954, plaintiff partnership contracted to purchase four pieces of refrigeration equipment from defendant corporation in order to perform a major refrigeration job for Bob Ostrow, engaged in food packaging.

Plaintiff ordered the equipment in question after consulting a Mr. Flynn of San Francisco and examining the Governair catalogue setting forth materials available on refrigeration jobs. Mr. Flynn, a refrigeration engineer of many years standing and a friend of Donnelly with whom he had conducted prior enterprises, was not employed as an agent or representative of defendant. He sold equipment on behalf of several refrigeration companies, some of which were competitive with each other. His relationship to Governair stemmed from the fact that a Mr. Feldstein of the Los Angeles area had agreed to pay a percentage of his Governair commissions to Flynn upon the completion of any sales effected by the latter.

The order which has given rise to the present suit reached Governair in March of 1954 and was acknowledged by defendant on both March 18th—the original order—and March 23rd—the revised order. The acknowledgments contained, in large print, a disclaimer of all warranties, express or implied, other than title and freedom from defects in workmanship or material for a period of one year.

After plaintiff partnership installed the air handling units and the condenser, together with the balance of the refrigeration equipment required by Bob Ostrow, the coils of the three air handling units were found to have been incorrectly circuited. The entire system failed to reduce temperatures in the Ostrow plant consisting of a shipping room, a receiving room and a packing room.

Plaintiff notified Mr. Flynn of the defects in the circuiting and also communicated with Mr. Feldstein in Los Angeles. Defendant, when informed by its Los Angeles representative of the difficulties experienced on the Ostrow job, authorized the recircuiting of the coils. This was done by Pacific Metals

Company who charged for labor and materials $615.08.[1]

At the time plaintiff discovered the erroneous circuiting of the coils on the three air handling units, it performed a makeshift emergency job on one unit in the packing room in order to reduce temperatures immediately. The cost was $900.63. On the date in question Bob Ostrow had begun to move certain food products in this room.

Plaintiff, in its prayer for damages, has asked for a sum in excess of $10,-000. It prays for reimbursement not only for the cost of recircuiting the three air handling units, whose erroneous circuiting is admitted by defendant, but also requests recompense for numerous items of consequential damage which purportedly arose because of defendant's failure to deliver equipment which would perform up to specifications.[2]

The background of plaintiff's bid in seeking the Bob Ostrow job is important in achieving perspective before applying the law. Ostrow did not furnish final drawings and specifications to plaintiff when it computed refrigeration requirements for the new plant. Its computations were based upon *estimates* of room space, insulation, personnel, machinery and other factors entering into the heat reduction requirements of the new plant. These estimates and computations were engaged in by Donnelly and Flynn, and at no time were they submitted to or approved by the Governair Corporation. The defendant was not bound by Flynn's conduct or estimates; nor obligated in damages by any claimed error on his part.

The data utilized by the partnership proved to be far removed from the ultimate measurements of the finished plant. Moreover, the insulation was less than that relied upon by plaintiff and in some instances was not used at all. Some 35 employees occupied the packing room as opposed to estimates of 25, while Bob Ostrow installed machinery which plaintiff had not expected to be in the building. The totality of the modifications between the plant as originally visualized by plaintiff and ultimately constructed by Bob Ostrow was such as to make plaintiff's estimate of refrigeration equipment required to perform the necessary heat reduction far from adequate. Thus plaintiff assumed that a system which would remove approximately 150,000 BTU's per hour would be sufficient. Actually, the refrigeration load exceeded 400,000 units. The system had to be operated 24 hours per day as against the 16 which plaintiff had used in making its computations. The main difficulties encountered by plaintiff in achieving successful refrigeration were based primarily on insuffi-

---

1. Reasonable cost of recircuiting $457.14, plus premium paid Pacific Metals for overtime, etc. $157.94.

2. The following items constitute the claimed damages:

| | | |
|---|---|---:|
| 1. | Premium paid Pacific Metals for recircuiting with overtime and for revisions made by plaintiff in the shipping room coil .........$ | 157.94 |
| 2. | Alleged cost of revisions in refrigeration system made to meet unanticipated refrigeration load ............................. | 2,266.77* |
| 3. | "Makeshift" revision of shipping room airhandling unit allegedly made to avoid food spoilage claims .......................... | 900.63* |
| 4. | Alleged loss under contract with Ostrow ....................... | 2,795.16 |
| 5. | Cost of litigation with Ostrow .............................. | 588.00 |
| 6. | Payment of plaintiff's insurer in settlement of food spoilage claim.. | 400.00 |
| 7. | Alleged loss of future business with Ostrow and Turk and Meck.. | 2,500.00 |
| 8. | Certain miscellaneous costs ................................ | 515.45 |
| | | $10,062.85 |
| | Reasonable cost of recircuiting ............................. | 457.14 |
| | | $10,519.99 |

* The sum of $61.10 is duplicated in these sums.

cient equipment rather than any short-coming in the units and condenser supplied by defendant.

Under defendant's warranty, liability must be limited to defects in material or workmanship. Defendant concedes responsibility for the correction of the air handling units. Beyond this it denies liability.

 Defendant consummated its contract with plaintiff. by sending its acknowledgments which included limitations on warranty as set forth above. Plaintiff is held to the conditions set forth in the acknowledgments whether Mr. Donnelly read the instrument or not. Couts v. Sperry Flour Co., 85 Cal. App. 156, 259 P. 108; Davis Co. v. Bertrand Seed Co., 94 Cal.App. 281, 271 P. 123.[3] Actually, plaintiff was aware of the express warranty as shown by its request in September, 1954, that defendant re-affirm such warranty in view of the fact that Pacific Metals, a stranger to the original contract, had recircuited the units supplied by defendant.

Defendant points out that all damages, with the exception of the re-circuiting of the coils, are consequential and are thus beyond the scope of the warranty which expressly limits liability to direct damages in the following language: "Governair Corporation assumes no liability for consequential damage of any kind." Monarch Brewing Co. v. George J. Meyer Mfg. Co., 9 Cir., 130 F.2d 582. Under the terms of the contract, recovery is limited to the reasonable cost of repair.

Defendant concedes the validity of the cost of recircuiting, but disputes the overtime. Other than this item, together with the $900.63 emergency work in the shipping room, all items enumerated represent consequential damages which in some instances were not proved, and in no way attributable to the alleged dereliction of the defendant Governair Corporation.

Apart from the defense under the plain provisions of the contract there is no basis in fact for an award in the amounts claimed by plaintiff. See footnote 2.

As illustrative, the sum of $2,266.77 is asserted as the cost of "revisions * * * to meet *unanticipated* refrigeration load."

Governair did not undertake or agree to "anticipate" the refrigeration load. The calculations were not made by or through defendant's agency, and as already pointed out, the persons solely responsible for anticipating the refrigeration load were Messrs. Flynn and Donnelly.

The mere reading of the claim or claims demonstrates their remote character. Monarch Brewing Co. v. George J. Meyer Mfg. Co., supra.

It is ordered that judgment be entered in favor of plaintiffs in the amount of $1,515.71. Each side will pay its own costs.

---

3. Cf. Burr v. Sherwin Williams Co., 42 Cal.2d 682, 693, 268 P.2d 1041.