[Civ. No. 2681.   Third Appellate District.—April 8, 1924.]

## D. A. STEWART et al., Respondents, v. BLANCHE ERSKINE-BOLST, Appellant.

## W. A. STEWART, Respondent, v. BLANCHE ERSKINE-BOLST, Appellant.

[1] LEASES—ACTION FOR DAMAGES FOR BREACH—DEFECTIVE PLEADING. In an action by the lessees against the lessor for damages for the destruction of crops, where the complaint quotes the clause in the lease, in which the lessor covenants to do everything reasonably necessary to keep the water-level in the ditches bordering on and running through the demised lands as nearly as possible at an elevation of four feet below the surface level of the land, and then alleges that the defendant failed to comply with such covenant, that plaintiffs complied with the terms and conditions of the lease covenanted to be performed by them, and that by reason of said failure by defendant, plaintiffs have suffered great damage and injury to the crops growing on said lands and premises, etc., but does not allege how or in what manner the alleged failure of defendant caused injury or damage to the crops of plaintiffs, a special demurrer directed toward such deficiency should be sustained.

[2] ID.—ERROR IN OVERRULING DEMURRER—ISSUES—TRIAL—ABSENCE OF INJURY.—In such an action, the error of the trial court in over-

---

1. See 15 **Cal. Jur.** 706.

ruling defendant's special demurrer on the ground that the complaint does not state how or in what manner the alleged failure of defendant caused injury or damage to the crops of plaintiff does not require a reversal of the judgment after a full hearing, without objection, upon all the issues which could have been presented if the complaint had been drawn according to the forms approved by the most skillful lawyers or exacting methods of procedure, and there is no showing that defendant was misled or that any injury resulted from the defect in the pleadings.

[3] Id.—Construction of Lease—Flood Waters—Exoneration from Damage Clause.—The demised premises having been located on an island which was entirely surrounded by levees constructed for the purpose of reclaiming the lands and to protect such lands from the flood waters that come down through that section of the country when the rivers spread out their banks and carry destruction and devastation in their course, the obligation of the clause in the lease requiring the lessor to keep the water-level in the ditches bordering on and running through the demised lands as nearly as possible at an elevation of four feet below the surface of the land was not annulled by the further clause in the lease to the effect that the lessees "will have no claim" against the lessor "for damages suffered . . . by reason of any flood or overflow of water upon or over said premises," but both such provisions may be given full force and effect—the former referring to a condition or situation inside the levees, and the latter to a cause arising or coming from outside the district, arising above the surrounding levees and producing a condition of damage and devastation therein.

[4] Id.—Failure to do Everything Reasonably Necessary—Proximate Cause of Damage — Expense — Evidence — Findings.—In this action by the lessees for damages for the destruction of crops, the jury was justified in concluding that the lessor did not do everything reasonably necessary to keep the water-level in the ditches bordering on and running through the demised lands and premises as nearly as possible at an elevation of four feet below the surface of the lands, and that the lessor's failure in this regard was the proximate cause of the damage to the crops of the lessees; and the fact that it would have required an expenditure of considerable money was immaterial, where the act or thing required to be done was in no sense a physical impossibility.

[5] Id. — Measure of Damages — Erroneous Theory — Evidence — Waiver of Objection.—In such an action, where the amount of damages is carefully presented and the testimony in relation thereto is submitted to the jury upon a state of facts tacitly

---

2.  See 2 Cal. Jur. 1004; 2 R. C. L. 230.
3.  See 15 Cal. Jur. 624; 16 R. C. L. 699.
4.  See 16 R. C. L. 1035, 1042.

admitting that if the plaintiffs are entitled to recover they are entitled to recover the amount asked for, on appeal from the judgment in favor of plaintiffs the appellate court will not sustain an objection to testimony which was not made at the time of the trial or hold that such testimony was improperly admitted and order a new trial when the whole case shows that no one questioned the competency of such testimony to fix the damages in the case at the time of its admission.

[6] ID. — SUBMISSION OF QUESTION OF LAW TO JURY — ABSENCE OF PREJUDICE.—Conceding that the consideration of the lease was a pure matter of law, the action of the trial court in leaving to the jury the interpretation of certain clauses of the lease was not prejudicial to defendant, where the jury followed the law applicable to the case and the consideration of the lease.

[7] ID.—CAUSE OF DAMAGE—PROPER INSTRUCTION.—In such action, defendant's requested instruction that "Plaintiffs, in their leases, expressly agreed to keep all ditches clean from weeds at all times. If you find from the evidence that plaintiffs did not at all times keep all ditches on said premises clean from weeds and that as a result of such failure, the drainage ditches became clogged up and the flow of the water in such ditches" during certain specified months "was impeded to such an extent that damage resulted the defendant cannot be held liable for the injury resulting from such cause," was not rendered erroneous by the addition of the phrase "through no fault of defendant," after the word "resulted" in the concluding clause.

[8] ID. — ERRONEOUS INSTRUCTION — HARMLESS ERROR. — Even if such instruction, as thus modified and given by the trial court, was erroneous, the error was harmless in view of the court's subsequent instruction that "No damages can be awarded plaintiffs in this case unless it is proven to your satisfaction that there was a breach of the clause of the lease in question on the part of defendant and that such breach caused the damage alleged."

(1) 40 **Cyc.**, p. 763.    (2) 4 **C. J.**, p. 1170, sec. 3196.    (3) 40 **Cyc.**, p. 759.    (4) 40 **Cyc.**, p. 763.    (5) 3 **C. J.**, p. 881, sec. 781 (1926 Anno.).    (6) 4 **C. J.**, p. 1026, sec. 3010.    (7) 40 **Cyc.**, p. 763. (8) 38 **Cyc.**, p. 1784.

APPEALS from judgments of the Superior Court of Solano County. W. T. O'Donnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

5.   See 10 **Cal. Jur.** 824; 2 **R. C. L.** 77.
6.   See 6 **Cal. Jur.** 328; 6 **R. C. L.** 862; 2 **Cal. Jur.** 1004; 2 **R. C. L.** 230.
8.   See 14 **R. C. L.** 817.

Purcell Rowe, W. U. Goodman, Chas. S. Wheeler, Sullivan & Sullivan and Theo. J. Roche, for Appellant.

Arthur C. Huston and Jos. M. Raines for Respondent.

PLUMMER, J.—The two cases above named were heard in the trial court together upon the same testimony which has been presented to this court upon one transcript and, therefore, will be heard and determined as one cause of action.

The actions are for damages for the destruction of crops. Plaintiffs had judgment and the defendant appeals.

On the fourteenth day of June, 1917, the defendant being the owner of a tract of land embracing several hundred acres situated on Ryer Island, in the county of Solano, state of California, made and entered into an indenture of lease with the plaintiffs whereby said lands and premises were demised and let to the plaintiffs for a term of twelve years upon a rental aggregating approximately $250,000.

This indenture of lease, among other provisions, contains the following paragraphs constituting the basis of this action, the meaning of which is held to be different by the respective parties and calling for construction by this court. The first of said paragraphs appears in said indenture of lease in typewritten form and is as follows: "Said first party agrees to do everything reasonably necessary to keep the water level in the district ditches bordering on and running through the lands hereby demised, as near as possible at an elevation of four feet below the surface level of the land." The second paragraph, just referred to, appears in the printed body of said indenture of lease and is as follows: "And in consideration of the premises, it is further agreed by and between the parties hereto that said second parties will have no claim against said first party for damages suffered by them or either or any of them, or their or either or any of their families or effects by reason of any flood or overflow of water upon or over said premises against said first party, either personally or as a stockholder or a member of said Reclamation District No. 501."

Following the allegations of the complaint and the testimony set forth in the transcript, it appears that during the months of January and February, 1919, the defendant did

not comply with the typewritten covenant in the lease in
that the water in the ditches referred to was not kept at an
elevation of four feet below the surface of the demised
lands, but was permitted to rise therein above the surface
of said lands, to spread out over the same and so inundate
and saturate the lands in question that crops growing thereon
were very greatly injured; that the plaintiffs were thereby
prevented from cultivating or planting crops upon other
portions of said lands, all to the damage of the plaintiffs in
a large sum of money, and, as found by the jury in one case
in the sum of $20,934 and in the other case in the sum of
$23,000.

Upon this appeal, the appellant sets forth four grounds
for reversal, to wit: First, that neither of the complaints
filed by the plaintiffs states a cause of action; second, that
the printed paragraph of the lease set forth herein exoner-
ates the defendant from all damages suffered by the plain-
tiffs; third, that the damages are excessive; and, fourth,
errors in instructions given by the court to the jury.
[1]   The amended complaint in each action sets forth the
typewritten clause which we have quoted, in which the lessor
covenants to do everything reasonably necessary to keep
the water-level in the ditches, bordering on and running
through the demised premises, as near as possible at an
elevation of four feet below the surface level of the land
and the allegation that the defendant failed to comply with
such covenant, that the plaintiffs have complied with the
terms and conditions of the lease covenanted to be per-
formed by them, and then the following allegation as to
damages that by reason of said failure of said defendant,
said plaintiffs have suffered great damage and injury to the
crops growing on said lands and premises, etc.

The defendant demurred to both of the amended com-
plaints, the demurrers being identical, the first ground of
demurrer being that the amended complaints do not state
a cause of action and then specifically setting forth eight
different grounds, only one of which need be here set forth.
It reads: "How or in what manner the alleged failure of
defendant caused injury or damage to the crops of plain-
tiffs." The demurrers were overruled and the ruling of
the court is assigned as error.

As against the general portion of the demurrer, we think the complaint in each case is sufficient; as against the special · cause of demurrer which we have quoted, we are inclined to the view that the trial court should have sustained the same and required an amended complaint to be filed in each case setting forth more clearly and particularly the manner in which the plaintiffs' crops had been damaged, etc. **[2]** This view of the pleadings, however, does not necessitate a reversal with a direction to the court below to sustain the appellant's demurrers and allow the plaintiffs to file further amended complaints in these actions. The cause went to trial, as appears from the transcript, upon the theory that the defendant had not taken or performed the necessary acts reasonably required by her to be performed under the covenants of the lease prior to the months of January and February, 1919; that by reason of not having enlarged the district ditches, running through and bordering upon the demised premises prior to the time referred to, their capacity was not sufficiently large to enable the defendant to comply with the terms and conditions contained in the lease; and that by reason of such failure the waters rose in said ditches and flowed out over the demised lands and premises, inundating and saturating the same and materially injuring the crops growing thereon. All of this testimony was introduced without a single objection being interposed thereto or any statement being made by counsel indicating that all of said issues were not properly tendered by the pleadings or that the defendant was being taken by surprise or did not fully understand the issues tendered and to be met. A few quotations from counsel for appellant will suffice to show that the scope of the issues being tried and to which the testimony was being directed was fully understood. We cull these statements from the record: "We are in court under what we had failed to do prior to and up to February, 1919." "We are here to answer this one proposition: did we do everything necessary in order to keep the ditches that were then there, as near as possible at a certain level. If we show that, that is our defense." "We are in court here to determine whether we have followed the terms of our lease." The testimony also shows that all the parties to the action fully understood the location and character of the lands, the necessity for keep-

ing the water at a certain level below the surface, that to do so it would be necessary to remove the waters falling upon said land during the rainy season as well as take up and convey away the natural seepage water permeating all lands situated in the Delta district.

The answers filed by the defendant also specifically met the issue as to whether the defendant had or had not complied with her covenant in reference to keeping the water in the ditches at a certain level.

We are now dealing with the pleadings after a full hearing upon all the issues which could have been presented if the amended complaints had been drawn according to the forms approved by the most skillful lawyers or exacting methods of procedure. There is no pretense that the defendant has been misled; there is no showing whatever that any injury has resulted from the defect in the pleadings. Under this state of the case, we think the language of this court in the case of *Boyle* v. *Coast Improvement Co.*, 27 Cal. App. 714, 721 [151 Pac. 25, 28], directly in point. "It seems to us that the reformed procedure would receive a decided shock if a defendant should be permitted to stand by and without objection allow an issue to be tried as though properly presented by the pleadings and on appeal escape the consequences by claiming that the complaint failed to present such issue. . . . In the case here the trial proceeded in all respects as though the pleadings sufficiently presented the issue as to there being heirs, and precisely as it would had the complaint contained the allegation which it is insisted it should have contained. Why, then, should the case go back to have the complaint amended, as it is manifest that the proof would be the same. How can it be said that defendant has sustained 'substantial injury and that a different result would have been probable if such error . . . or defect . . . had not occurred'?" This is a quotation from a former decision by this court in the case of *Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal. App. 321 [147 Pac. 90]. In both cases section 475 of the Code of Civil Procedure and section 4½ of article VI of the constitution are referred to and relied upon. That section requires that no judgment shall be set aside or new trial granted for any error as to any matter of pleading unless the error complained of has resulted in a miscarriage of

justice. Nothing of that kind appears in this case. The two decisions to which we have referred, the cases there cited, the section of the Code of Civil Procedure and the amended section of the constitution, we think a sufficient answer to the appellant's objection to the complaints now under consideration.

We come now to the second objection. [3] Many cases have been cited based upon exoneration clauses contained in leases and the deduction is drawn therefrom that the exoneration clauses in the leases involved in this case overcome and annul any and all obligations contained in the typewritten covenant which we have heretofore set forth. On the part of the respondent it is earnestly contended that the typewritten covenant, if there is any conflict between the two clauses or paragraphs, takes precedence over printed matter contained in the lease and, therefore, stands in the indenture as though there were no printed exoneration clause.

As we view this case, there is no conflict between the two clauses or paragraphs and each of them may stand and be given full force and effect. They refer to different contingencies and conditions. They relate to different waters and to different causes and results.

The evidence shows that Ryer Island, on which the demised premises are located, is entirely surrounded by levees constructed for the double purpose of reclaiming the lands within district 501 and to protect such lands from the flood waters that come down through that section of the country when the rivers spread out over their banks and carry destruction and devastation in their course. As we read the lease, the exoneration clause relates to flood waters as ordinarily understood, to wit: A body of moving water, a flowing stream, a body of water rising, swelling, and overflowing land not usually thus covered. This is the definition given by Webster and approved by several courts. The parties executing the lease under consideration knew and had in mind the liability of the flooding of Ryer Island by the waters of the Sacramento River and its tributaries. They knew that the swelling waters in the river were likely to break the barriers theretofore erected by the district and flood the demised premises, destroying everything in the way of improvements that the plaintiffs might place thereon.

This is the kind of flood to which the printed portion of the lease refers. Against such a flood no one could reasonably be required to covenant. The damages arising from floods of this nature are such as every farmer in the delta region is presumed to take into consideration when he begins farming operations upon premises always exposed to such menace. If this is not the kind of flood referred to in the exoneration clause, then, in the event that defendant found that her covenants involved the expenditure of more money than was contemplated, all the defendant need to do would be to cease operations, let the waters rise ·in the ditches, saturate, inundate, and overflow the demised lands and then say, "I am not responsible for the flooding of your lands." This statement clearly shows that the two paragraphs have reference to different and separate causes and effects. The typewritten paragraph refers to a condition and situation inside the levee, the printed paragraph, an exoneration clause, relates to a cause arising and coming from outside the district, rising above the surrounding levees and producing a condition of damage and devastation therein.

We think the foregoing sufficiently shows that the two paragraphs may stand as independent clauses or paragraphs in the lease and that each of them may be given full force and effect.

[4] The question then occurs, Did the defendant do everything reasonably necessary to keep the water-level in the district ditches bordering on and running through the demised lands and premises as nearly as possible at an elevation of four feet below the surface level of the lands and was the jury justified in finding that the defendant had not done so? The covenant in question is not limited in its language as to the capacity of the ditches at the time of the execution of the indenture of lease. It is a covenant to keep the water at a certain level. This includes everything reasonably necessary to accomplish such purpose. It presupposes the maintaining of ditches of such capacity and pumping plants of such water-hoisting power as may be reasonably sufficient to comply with the intendment of the parties in the execution of the lease. The lease itself sets forth that a considerable portion of the acreage of the demised premises shall be planted to asparagus and it is reasonable to infer that the parties took into consideration

the necessary conditions requisite to be maintained for the profitable cultivation of that plant. The testimony shows, as well as the covenant in the lease, that all parties understood that the successful cultivation of asparagus required the water-level in the ditches to be kept at least four feet below the surface level of the land. It, also, satisfactorily appears from the testimony that during the months of January and February, 1919, the waters in the ditches referred to were not kept at the required level but rose therein to such an extent that a large portion of the demised lands was inundated, saturated, and rendered unfit for the cultivation of crops for a considerable period of time. The testimony also shows that, while the rainfall for the seasons of 1918 and 1919 was excessive, it was not unusual nor such as does not frequently occur, and was not such a precipitation as might not be reasonably anticipated and guarded against. It also appears that after the execution of the lease and prior to the injury complained of, a period covering approximately eighteen months, nothing was done toward enlarging the ditches bordering upon or running through the leased lands and premises so as to render it possible for the defendant to keep the water-level as nearly as possible at a certain line or elevation. The testimony of several engineers, as shown by the transcript, is to the effect that the taking care of the rainfall, such as occurred during the season in controversy, was a mere matter of ditch capacity; and that the ditches, as they existed at the time of the injury, were insufficient in capacity and required enlargement in order to properly protect lands leased to the plaintiff in this action. In other words, the question of protecting the lands and safeguarding them from the rise of waters in the ditches as covenanted in the leases is a mere matter of financial expenditure and not a question of physical possibility or impossibility. It may be true that the expenditures required to properly protect the lands as covenanted aggregate or would aggregate a considerable sum of money, considered in and of itself, and by itself, but when the further fact is considered that the rental value required to be returned and paid by the lessees to the lessor is graduated according to years, from $10 to $27.50 per acre, aggregating the total sum, as heretofore stated, of approximately $250,000, the cost of protection agreed to be afforded,

may not be at all out of proportion, when all the circumstances and conditions are considered together. Be that as it may, however, the covenant of lease, as we read it, is to do a certain thing or to perform an act which is in no sense a physical impossibility but requiring only the expenditure of capital. This, of course, constitutes no defense. We think in this particular the jury, from the testimony introduced, had a right to conclude that the defendant had not done all that she was reasonably required to have done prior to the injury complained of; and that the defendant's failure so to comply with the covenant of lease to keep the water-level below, or at a certain elevation, was the proximate cause of the damage to the plaintiffs' crops. When the question of the sufficiency of testimony is presented, it is not the province of the court, as has been often stated, to weigh and determine the same, but only to ascertain whether there is testimony in the case upon which the trial court or jury may reasonably base the conclusion reached. We think there is such testimony in this case and that determines the question.

[5] The third contention urged by the appellant that the damages are excessive and that the rule adopted for ascertaining the same is incorrect meets the same principle of law encountered by appellant's first objection considered in this opinion. The testimony upon the subject of damages was introduced without any objection whatsoever. The rule laid down in the case of *Teller* v. *Bay & River Dredging Co.*, 151 Cal. 209 [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942], appears to have been followed very closely. The whole subject was gone into both upon the direct and cross-examination of the witnesses. The whole theory of the case, so far as the question of damages is involved, appears to have been that the proper method of procedure was being followed; and that the testimony introduced and submitted to the jury was the proper testimony to be considered by them in ascertaining what damages, if any, the plaintiffs were entitled to recover. Upon this appeal, it is asked that plaintiff's claim of loss on field No. 2 of $2,885.52, also of the sum of $2,173.29 on fields Nos. 4 and 5, and that the further sum of $1,607.25 on fields Nos. 6 and 7, should have been calculated and determined according to the rule laid down in *Crow* v. *San Joaquin & Kings River*

*Canal & Irr. Co.,* 130 Cal. 309 [62 Pac. 562, 1058], that the rental value only of said land should have been considered. No such contention was made in the court below; no objection was made to the character of the testimony introduced to enable the jury to ascertain and determine the losses suffered by the plaintiffs upon the particular tracts here enumerated. The contention now is that those lands had not been planted or seeded to crops and rental value only constituted the loss suffered by the plaintiffs. Whenever the rule laid down in the Crow case, *supra,* applies we, of course, are bound by that rule, but it is evident that the mere rental value paid by the plaintiffs to the defendants for water-logged lands would in no sense be adequate in this case. The plaintiffs were deprived of the use of the lands adapted for a particular purpose and we may conclude from the amount of rent per acre agreed to be paid were peculiarly valuable for agriculture when properly protected. Some such view must have been in contemplation of the parties when the testimony was being introduced upon which it was purposed to ask the jury to fix the amount of damages in these cases. The amount of damages appears to have been very carefully presented and the testimony in relation thereto submitted to the jury upon a state of facts tacitly admitting that if the plaintiffs were entitled to recover they were entitled to recover the amount asked for. Under such circumstances, we do not very well see how this court can now sustain an objection to testimony which was not made at the time of the trial or hold that such testimony was improperly admitted and order a new trial when the whole case shows that no one questioned the competency of such testimony to fix the damages in this case at the time of its admission. It is evident that the judgments are not excessive in the amounts claimed by appellant. The difference, if any, would be the rental value of the lands to the plaintiffs and the amount allowed. What that is we have no way of ascertaining and nothing to show the same was introduced in the court below or offered to be introduced or pointed out to us here. We think appellant's third objection insufficient to warrant a reversal of this cause.

The contention is further made by the appellant that the jury awarded damages covering twenty acres of barley de-

stroyed by fire and for which destruction the plaintiffs collected insurance. Testimony as to the destruction of twenty acres of barley was introduced by the defendant and also as to the payment of the insurance thereof. It is here sought to have us conclude that the twenty acres of barley referred to were taken into the estimate made by the jury. We have read the testimony carefully, as set out in appellant's brief and also in the transcript, and do not find that there is anything showing that the twenty acres here mentioned were a part of the inundated and replanted lands, but if such were the case it would not materially alter the result, because as to the replanted lands the jury allowed damages only for the lessened production of the crops realized and not for the amount which was actually obtained. This appears to have been overlooked by the appellant.

[6] It is finally urged that the court below misdirected the jury as to matters of law, one of the contentions under this subdivision being that the court left to the jury the interpretation of the clauses of the leases which we have heretofore considered in this opinion. This contention requires but little comment. It is evident that the jury by its verdict followed the interpretation which we have given and, hence, must have followed what we believe to be the law applicable to this case and the consideration of the leases involved herein. Under such circumstances, the defendant is not prejudiced even though we were to hold that consideration of the leases is a pure matter of law for the court. [7] It is further urged that the court committed prejudicial error by inserting the following words, to wit, "through no fault of the defendant," in instruction number 4 asked by the defendant. The instruction as requested reads as follows: "Plaintiffs, in their leases, expressly agreed to keep all ditches clean from weeds at all times. If you find from the evidence that the plaintiffs did not at all times keep all ditches on said premises clean from weeds and that as a result of such failure, the drainage ditches became clogged up and the flow of the water in such ditches in February and March, 1919, was impeded to such an extent that damage resulted the defendant cannot be held liable for the injury resulting from such a cause." This instruction, as given, was made to read as follows by the court: "Plaintiffs, in their leases, expressly agreed to

keep all ditches clean from weeds at all times. If you find from the evidence that plaintiffs did not at all times keep all ditches on said premises clean from weeds and that as a result of such failure, the drainage ditches became clogged up and the flow of the water in such ditches in February and March, 1919, was impeded to such an extent that damage resulted, *through no fault of defendant,* the defendant cannot be held liable for the injury resulting from such a cause.'' It is evident that the court had in mind, in modifying the foregoing instruction, the fact that the drainage ditches emptied into and discharged their waters into the ditches which we have heretofore been considering and that unless the defendant kept the waters in such ditches below a certain level the drainage ditch could not discharge waters thereinto. **[8]** In this view, we do not think the modification erroneous, but if so it was harmless in view of instruction number 6 immediately given thereafter, which reads as follows: ''No damages can be awarded plaintiffs in this case unless it is proven to your satisfaction that there was a breach of the clause of the lease in question on the part of defendant and that such breach caused the damage alleged.'' Minor objections are made to some other instructions which do not seem to us to call for comment herein further than to say that upon the whole case we think there were no errors in the instructions prejudicial to the defendant or which furnish any reasonable cause for urging errors therein.

We think the judgments of the trial court entered in these cases should be affirmed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 8, 1924, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 5, 1921.

All the Justices concurred.