[Civ. No. 12058. Second Appellate District, Division Two.—March 20, 1939.]

ED SUTTER, Respondent, v. ASSOCIATED SEED GROWERS, INC. (a Corporation) et al., Defendants; J. L. TALBOTT, Appellant.

E. J. Talbot and Burton B. Crane for Appellant.

C. Kelley Hardenbrook for Respondent.

WOOD, J.—Plaintiff commenced this action to recover of defendants Associated Seed Growers Inc., and J. L. Talbott the sum alleged to be due as the balance of the purchase price of a crop of Lima seed beans. The first cause of action sets forth the execution of a contract between plaintiff and the two defendants wherein it was agreed that plaintiff would grow the beans and defendants purchase them at a price of five and one-half cents per pound, the total purchase price being $6,649.72. The second cause of action is based upon a common count for merchandise sold and delivered at defendants' special instance and request of the agreed value of $6,649.72. A nonsuit was granted as to defendant Associated Seed Growers Inc., the plaintiff having failed to establish that defendant Talbott was acting as agent for the other defendant as undisclosed principal. A jury returned a verdict for the amount alleged to be due and defendant Talbott prosecutes this appeal from the resulting judgment.

Respondent and appellant entered into a contract on February 3, 1937, whereby respondent agreed to grow, sell and deliver to appellant a crop of Henderson Bush Lima beans for seed purposes. The contract was made upon a printed form which was filled in and signed by one Dreyfus, appellant's employee. In its original form the printed blank contained this provision: "Seller further agrees to deliver an article not containing in excess of 5 per cent cylinder cracks and with a germination of 90 per cent or better." Respondent objected to the provision calling for 90 per cent germination, saying to Dreyfus: "There is no germination test to go into the contract. I can contract with the McCrea people without a germination clause." Dreyfus thereupon struck from the contract the provision above quoted and wrote in ink upon the face of the contract the words, "to be recleaned beans choice recleaned same as commercial beans No. 18 screen". The contract was then completed and signed. Mr. Dreyfus was not called as a witness and the testimony of respondent concerning the making of the contract was uncontradicted. The contract further provided that respondent was to sell the entire crop of the Sutter ranch and that appellant would furnish the seed. Respondent would also have the privilege to "rogue" the field (pick out beans of other varieties).

From time to time during the growing and harvesting of the beans they were inspected by a representative of appellant. Early in the threshing of the beans appellant's representative objected to the manner in which the work was being done by one Dominguez, who had been employed with his machine to do the threshing. Respondent thereupon employed two others who completed the work under the inspection and to the satisfaction of appellant's representative. When the beans were placed in the warehouse they were recleaned by the warehouse company with its equipment and crew and this work was inspected and approved by appellant's representative. The beans were placed in the name of appellant at his request on November 27, 1937, while they were in the warehouse.

Appellant made several advances upon the purchase price, the sum of $1,000 being paid in September, 1937, during the growing period, the sum of $600 on November 27th, when the beans were in the warehouse, the sum of $150 on December

24th, and the further sum of $400 on December 28th. On December 2, 1937, defendant Associated Seed Growers, Inc., with whom appellant had a contract for the purchase of the beans, sent samples of the Sutter beans to Sacramento for analysis and reports of the analysis were received about December 20th, disclosing a germination of less than 80 per cent. On December 27, 1937, respondent was informed that the germination percentage was so low that the beans were not acceptable to defendant Associated Seed Growers, Inc. Appellant notified respondent by letter dated January 31, 1938, that he would not accept or pay for the beans. At the time of trial the beans were still in the possession of appellant.

It is conceded by appellant that respondent delivered the beans to the warehouse "in choice recleaned condition as interpreted by the California Lima Bean Growers Association". But he claims that the contract contained a warranty as to the quality and fitness of the beans "for seed purposes", and that respondent has not complied with the terms of the alleged warranty. He bases this claim upon testimony that beans with a germination percentage of less than 80 per cent were not satisfactory to seed dealers. The statute applicable to the present situation is section 1735 of the Civil Code, which in part is as follows: "Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. (5) An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade."

It is clear that appellant may not rely upon the first subdivision of the section just quoted for the evidence establishes beyond question that appellant did not rely upon the skill or judgment of respondent, the grower of the beans. Appellant furnished the seed in the first place and inspected the growing, harvesting and cleaning of the beans at various

periods up to the moment when he received title to them in the warehouse. ██ Appellant, however, stresses the fifth subdivision of section 1735 and argues that 'there was an implied warranty of the quality of the beans for seed purposes which was "annexed by the usage of trade". This contention is refuted by the undisputed circumstances under which the contract was made. Respondent stated positively that no percentage of germination would be guaranteed and thereupon appellant struck from the contract the printed part which provided for a minimum germination and wrote upon the contract that the beans were to be "choice recleaned same as commercial beans". The written part of the contract must control the printed part. (Sec. 1651, Civ. Code.) It is apparent that the parties intended by the deletion of the requirement for a percentage of germination and the substitution of the written matter to exclude from the contract a warranty of the productivity of the beans. The statutory implied warranty of fitness does not apply to a sale where the seller expressly disclaims liability for the quality of the thing sold. (22 Cal. Jur. 968.) In *Couts* v. *Sperry Flour Co.,* 85 Cal. App. 156 [259 Pac. 108], a case involving the alleged warranty of barley sold for seed purposes, the trial court found that the seller expressly refused to warrant the seed and the reviewing court said that there was "no room for any question of an implied warranty in connection with the sale". The court further said: "As above indicated, in order to recover upon a warranty there must be two factors present,—first, an affirmation of fact by the seller with reference to the thing sold, and, second, an intention on the part of the seller that his affirmation shall constitute a warranty". Moreover, it was established beyond question that under the "usage of trade", sellers of seed do not warrant the quality or productivity of the seed. In *Miller* v. *Germain Seed etc. Co.,* 193 Cal. 62 [222 Pac. 817, 32 A. L. R. 1215], it was shown that there was and for many years had been a general custom in the seed trade to refuse to warrant the quality of seed sold. The Supreme Court held that the seller was entitled to an instruction that when the usage was so shown the jury should be instructed that the custom of the trade was "part of the contract unless excluded by an express agreement to the contrary".

Our disposition of the point just covered makes it unnecessary to pass upon the further contention made by respondent that appellant waived the alleged defects in the beans by making two payments on the purchase price after notice of the germination percentage of the beans and by delaying the notification of his rejection of the beans for more than a month after making the last payment.

■ Appellant complains of several instructions given by the court and argues that the court submitted to the jury questions of law which should have been determined by the court. Although some of the instructions are open to this criticism it does not follow that appellant thereby suffered any prejudice. The questions submitted must necessarily have been determined adversely to the contentions of appellant, who is not now in position to ask a reversal because of their submission to the jury. (*Stewart* v. *Erskine-Bolst*, 66 Cal. App. 461 [226 Pac. 644].) Appellant was not in position to ask for instructions more favorable to him than those actually given.

Appellant further contends that the trial court erred in not granting his motion for a nonsuit as to the first cause of action, his argument being that since the court granted the motion for a nonsuit made by the alleged undisclosed principal, no judgment could be rendered against appellant. To this contention respondent replies that upon the determination of the court that the codefendant was not an undisclosed principal he had a right to elect to proceed against appellant as the maker of the contract. It is unnecessary to pass upon the contention of the parties on this point for the reason that the judgment may be upheld upon the second cause of action.

The judgment is affirmed.

Crail, P. J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 18, 1939.