Joan G. RANDALL, Plaintiff, Appellee,

v.

Peter GOLDMARK et al., Defendants, Appellants.

No. 73–1374.

United States Court of Appeals, First Circuit.

Argued Jan. 8, 1974.

Decided April 18, 1974.

Kenneth A. Behar, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., and Walter H. Mayo, III, Asst. Atty. Gen., Boston, Mass., were on brief, for defendants, appellants.

Frank P. Samford, III, Cambridge, Mass., with whom John E. Bowman, Jr., Cambridge, Mass., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

PER CURIAM.

On this appeal, the Massachusetts Department of Public Welfare (the Department) and its executive officials[1] challenge a determination by the district court, 366 F.Supp. 947 that the Department's reduction of plaintiff's AFDC "shelter allowance"[2] violated section 402(a)(7) of the Federal Social Security Act, 42 U.S.C. § 602(a)(7) (1970), and the regulations promulgated thereunder. 45 C.F.R. § 233.20(a)(3)(ii)(c) (1972). Specifically, the district court in granting injunctive relief, ruled that the De-partment could not reduce plaintiff's $103 monthly shelter benefits by a $100 per month payment that her estranged husband was required to make directly to the mortgagee of the house in which plaintiff and her children were currently residing.[3] These payments were being made by plaintiff's spouse pursuant to a state probate court separation decree.

While recognizing that section 402(a)(7)[4] permits state agencies to take into consideration, in determining a recipient's actual need, "any other [available] income and revenue," the court noted that the quoted phrase had been defined by federal regulation as encompassing *"only* such net *income* as is *actually available* for current use . . ., [or] *currently available resources."* 45 C.F.R. § 233.20(a)(3)(ii) (c) (1972). (Emphasis added). Given such a definition, the court reasoned, the Department's policy of deducting such mortgage payments made directly to the mortgagee violated section 402(a)(7) and its effectuating regulations since these payments could not constitute "ei-

1. Appellants include Steven A. Minter, the Commissioner of the Massachusetts Department of Public Welfare, and his immediate superior, Peter Goldmark, the Secretary of the Massachusetts Executive Office of Home Services.

2. Following a determination that a particular individual is eligible for Aid to Families with Dependent Children (AFDC), the Department is obligated to determine a basic family budget based upon the recipient's need. 42 U.S.C. § 602(a)(7); Massachusetts Public Assistance Policy Manual (MPAPM), c. IV, § A, pt. 1, p. 1 (rev. 1972). Such a determination is made in accordance with general departmental assistance tables which reflect, in specific dollar amounts, estimated family requirements as they relate to varying living arrangements and family size. MPAPM, c. IV, § A, pt. 1, p. 9 (rev. 1970). Based on their particular circumstances, these tables indicate that plaintiff and her two minor children would normally be entitled to $217.-60 in monthly benefits, of which $103 would constitute their basic shelter allowance.

3. The mortgage on the house, owned by plaintiff and her spouse as tenants by the entirety, required total monthly payments of $184. Although not challenging the Depart-ment's right to determine her fixed maximum housing allowance at $103, plaintiff asserted that since her husband's $100 monthly mortgage payments may not be properly applied as a *pro tanto* offset, the Department remained bound to supply her actual shelter needs up to the $103 level. In her situation, since the remaining mortgage was $84 per month, the plaintiff conceded that, under her theory, the Department was liable to make available only that amount. The Department asserted that its liability, after applying the husband's payments, was only $3 per month.

4. Social Security Act § 402(a)(7), codified as 42 U.S.C. § 602(a)(7), provides in relevant part:

"[E]xcept as may otherwise be provided in clause (8), . . . the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State agency determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income."

ther income available to plaintiff for current use, or . . . a currently available resource." Although plaintiff also urged that the Department's policy was constitutionally invalid under the fourteenth amendment, the court, by disposing of the case on statutory grounds, concluded that it was unnecessary to reach directly the merits of her constitutional contentions.

We must first consider our jurisdiction.

### Section 1343(3) Constitutional Claims and Pendent Jurisdiction

■ Plaintiff makes two constitutional claims. It is clear that there is no pendent jurisdiction over the statutory claims if the constitutional claim is totally insubstantial. *See* United Mine Workers v. Gibbs, 1966, 383 U.S. 715, 722, 86 S.Ct. 1130, 16 L.Ed.2d 218; Almenares v. Wyman, 2 Cir., 1971, 453 F. 2d 1075, 1082 & n.9, cert. denied 405 U. S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815; *cf.* Hurn v. Oursler, 1933, 289 U.S. 238, 242–243, 53 S.Ct. 586, 77 L.Ed. 1148.

Plaintiff's equal protection contention is essentially predicated upon the fact that the Department will, in all cases, deduct an estranged husband's shelter payments only up to the maximum statutorily-allowable amount that would otherwise be available to an AFDC-recipient wife. Thus, since plaintiff's mortgage is $184, and her husband can allegedly afford to pay only $100 of that sum, the Department would provide her with just $3 in shelter payments ($103 maximum—$100 payment)—leaving her $81 short. However, plaintiff argues, a comparable recipient with an $184 monthly mortgage whose separated spouse can afford to pay the entire mortgage cost would also have her shelter allowance reduced only up to the statutory maximum (in this case, the full $103), yet, at the same time, this recipient would be required to make no additional housing payments. Failure to equalize the ultimate housing consequences between the two recipients results, according to plaintiff, in an equal protection violation.

■ It is difficult to see any merit in this claim. While it is clear that it is true that with respect to these two purported "classes," certain disparities in housing arrangements would result from the Department's decision to treat all recipients uniformly, it cannot be seriously maintained that the cause of such disparity can properly be laid to the challenged Department policy. The Department has the unquestioned, limited obligation of providing all AFDC recipients whose family situation is comparable to that of the plaintiff with $103 worth of shelter. How that amount is to be allocated, whether through rental of an apartment, or through mortgage payments on a house, is strictly up to the recipient. To the extent that such shelter costs are actually reduced by third parties, the Department may, where regulations so permit, *see* post, legitimately make deductions from its maximum allowance. *See* Rodriguez v. Vowell, 5 Cir., 1973, 472 F.2d 622, 627; Reyna v. Vowell, 5 Cir., 1972, 470 F.2d 494, 496; Solman v. Shapiro, D.Conn., 1969, 300 F.Supp. 409, 414–416. Since the Department's resources are necessarily limited, such a practice is supported by the strong public policy of ensuring that the basic shelter requirements of all welfare recipients can be adequately met. *Cf.* Jefferson v. Hackney, 1972, 406 U.S. 535, 549, 92 S.Ct. 1724, 32 L.Ed.2d 285; Dandridge v. Williams, 1970, 397 U.S. 471, 479, 480, 90 S.Ct. 1153, 25 L.Ed.2d 491. The fact that certain recipients can, as a result of circumstances wholly apart from their relationship with the Department, independently satisfy their shelter needs in amounts greater than the specific welfare maximum, does not mean that the Department becomes thereby compelled to provide financial assistance above that maximum to recipients, such as plaintiff, who are not so fortunate. Nor does it mean that the Department must, as to these latter recipients, abandon its uniform policy of reducing shelter benefits to the extent

of outside payments. There can be no equal protection violation where the Department, for permissible policy reasons, Jefferson v. Hackney, ante; Dandridge v. Williams, ante, treats all recipients alike, even though the result may occasionally lead to some disparity in housing consequences.

■ We have equal difficulty with plaintiff's due process claim. It is, of course, true, as plaintiff asserts, that the Supreme Court has frequently found the application of irrebuttable presumptions to be unconstitutional. However, the only presumption made by the Department in the present case is that the mortgage payments made by plaintiff's separated spouse are actually used to reduce her shelter costs. There can be no question but that this is so at least in part. While plaintiff claims that she should be reimbursed for the full $81 amount, there is no economic justification for this. Her real claim is that only part of the $81 should be attributed to a housing allowance and that the rest is being applied to discharge the purchase money mortgage. The reasonableness of this we will deal with later. (See *The Merits,* post.) [5]

*Section 1343 Statutory Claim Jurisdiction*

Plaintiff claims that jurisdiction over her statutory claim can be based directly on section 1343(3) and (4). Section 1343(3) gives district courts jurisdiction over civil actions

"[t]o redress the deprivation, under color of any State law, . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

Although the Social Security Act is not a statute "providing for equal rights," Aguayo v. Weinberger, 414 U.S. 1146, 94 F.2d 1090, 1101, cert. denied sub nom. Aguayo v. Weinberger, —— U.S. ——, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974); McCall v. Shapiro, 2 Cir., 1969, 416 F.2d 246, 248–249, plaintiff contends that her claim falls within the scope of section 1983, and that section 1343 should be read as coextensive with section 1983, since originally it was intended to be the jurisdictional counterpart of section 1983. While the historical nexus between the two provisions is beyond question, *see, e. g.,* Lynch v. Household Finance Corp., 1972, 405 U.S. 538, 543–546, 92 S.Ct. 1113, 31 L.Ed.2d 424, the statutory language of section 1983 is not the same as that of section 1343(3), and to read them as coextensive would render the qualification in section 1343(3) "providing for equal rights of citizens" a nullity. We see no reason to so ignore the plain import of the statutory language.[6]

Plaintiff also claims that jurisdiction would lie under section 1343(4). That section provides for jurisdiction in the district courts over any civil action "[t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

5. Nothing the Supreme Court has recently said in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) convinces us that plaintiff's constitutional claims are substantial. In *Hagans,* the Court, applying the traditional substantiality test to an entirely different set of contentions, concluded that such contentions were sufficient to permit consideration of the pendent statutory claim. While the Court may have taken a particularly broad view toward measuring what claims are substantial, *see* 94 S.Ct. 1386 (Rehnquist, J., dissenting), we nonetheless believe that if the substantiality doctrine is to be given any meaning whatsoever, the claims offered by plaintiff in the instant action cannot be said to be adequate.

6. In Bomar v. Keyes, 2 Cir., 1947, 162 F.2d 136, cert. denied 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400, jurisdiction was exercised over a statutory claim solely because it fell within the scope of what is now section 1983, but in that case the question of section 1343 jurisdiction was apparently not considered. When the Second Circuit later did consider it, it rejected the argument that the two sections are coextensive. McCall v. Shapiro, ante; Aguayo v. Richardson, ante.

Section 1983 can be read as such an act providing for the protection of civil rights, and therefore, plaintiff claims, jurisdiction over this claim would lie. In Gomez v. Florida State Employment Service, 5 Cir., 1969, 417 F.2d 569, 580, n. 39, in a footnote, the Fifth Circuit appeared to accept this argument. Such a broad interpretation of the effect of section 1343(4), however, appears to be directly contrary to the congressional intent when it was added to section 1343 in the Civil Rights Act of 1957. In House Report No. 291, April 1, 1957, U.S.Code Cong. & Admin.News, p. 1976, this subsection is described as follows:

"These amendments are merely technical amendments to the Judicial Code so as to conform it with amendments made to existing law by the preceding section of the bill."

In Jones v. Alfred H. Mayer Co., 1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, the Court approved the invocation of section 1343(4) to allow jurisdiction over a suit brought under an 1866 civil rights statute. Although this might be taken as an endorsement of a broad reading of the statute, applying section 1343(4) to section 1983 would in essence eliminate the jurisdictional amount requirement for any federal question case involving deprivations under color of state law, a consequence arguably so broad when measured in the light of the congressional objectives in adding section 1343(4), that we prefer not to make a positive commitment at this time.

*Section 1331 Jurisdiction*

Since plaintiff is contending that the questioned Department policy violates both section 402(a)(7) of the Social Security Act and the federal regulations promulgated thereunder, jurisdiction would be available pursuant to 28 U.S.C. § 1331 (1970), if it could be shown that the amount in controversy exceeded $10,000. The district court, in rejecting section 1331 jurisdiction, stated that "[d]irect damage to the plaintiff falls considerably below the threshold amount. Indirect damage such as her

loss of future property rights, the disruption of her home, and the right to future welfare benefits are too speculative for this court to properly consider."

Without pausing to make a general ruling on this subject, *cf.* Rosado v. Wyman, 1970, 397 U.S. 397, 405 n.7, 90 S.Ct. 1207, 25 L.Ed.2d 442, and without pursuing to a finality the extent of the "legal certainty" by which a claim that more than the statutory amount is involved must be refuted, *cf.* St. Paul Mercury Ind. Co. v. Red Cab Co., 1938, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845, we have the gravest doubts whether in the case at bar the statutory amount is present. We must agree with the district court that the possible loss of plaintiff's property rights in, or of possession of, her home are altogether speculative and incapable of measurement. There is nothing in the record indicating that if forced to, plaintiff could not find adequate housing, at welfare standards, at $103 a month. Nor can we measure the alleged physical and psychological damage that plaintiff claims her family might suffer if she were obliged to move. *See, e. g.,* Davis v. Shultz, 3 Cir., 1971, 453 F.2d 497, 502 (displacement from youth services program); *cf.* Johnson v. New York State Education Dept., E.D.N.Y., 1970, 319 F.Supp. 271, 275, aff'd, 2 Cir., 1971, 449 F.2d 871, vacated for determination as to mootness, 409 U.S. 75, 93 S.Ct. 259, 34 L.Ed.2d 290 (loss of educational opportunity); Kiernan v. Lindsay, S.D.N.Y., 1971, 334 F.Supp. 588, 594–595, aff'd, 405 U.S. 1000, 92 S.Ct. 1295, 31 L.Ed.2d 472 (suspension of tenure).

■ We do agree with plaintiff, however, that the threatened loss of future welfare payments is a sufficiently real possibility to warrant consideration for section 1331 purposes. But, even giving full consideration to such cases as Thompson v. Thompson, 1913, 226 U.S. 551, 33 S.Ct. 129, 57 L.Ed. 347, Brotherhood of Locomotive Firemen & Enginemen v. Pinkston, 1934, 293 U.S. 96, 55 S.Ct. 1, 79 L.Ed. 219, and Aetna Cas. & Surety Co. v. Flowers, 1947, 330 U.S.

464, 67 S.Ct. 798, 91 L.Ed. 1024, it is extraordinarily difficult to achieve the jurisdictional amount, for what must be shown is not the ultimate gross, but the present discounted value of the future payments. *See Pinkston*, ante, 293 U.S. at 101, 55 S.Ct. 1. For such a value to exceed $10,000, using the Massachusetts legal interest rate of 6% for discounting purposes, we should have to indulge every assumption in favor of plaintiff: that the mortgage will not be paid up during the entire remaining 16-year period of the minority of her 4-year old child; that the child will remain a dependent and plaintiff will recover AFDC payments all through this period.

*The Merits*

Even if we were to assume for present purposes that some jurisdictional basis for plaintiff's statutory claim could be found, we would nevertheless be forced to conclude that her claim must fail on the merits. For although we may agree with the district court that the mortgage payments here involved could not appropriately be considered "income" to the plaintiff under Social Security Act § 402(a)(7), 42 U.S.C. § 602(a)(7), and its corresponding regulation, 45 C.F.R. § 233.20(a)(3)(ii)(c), we cannot accept its further conclusion that those payments do not constitute a "currently available resource." *Id.*

The district court ruled that to qualify as "currently available" within the meaning of the Act and regulation, a resource "must be in hand, readily liquidated, or under the control of the individual." However, the cases relied upon by the court for formulation of its standard, Green v. Barnes, 10 Cir., 1973, 485 F.2d 242; Wilczynski v. Harder, D. Conn., 1971, 323 F.Supp. 509, are not directly in point, and certainly do not compel the conclusion that a resource may not permissibly have a broader definition.

Although the legislative history of the Act is not particularly helpful in this respect, we believe that to qualify as a currently available resource under the Act and regulation, it need only be shown that regular payments made by third parties directly benefit an AFDC recipient in such a manner that they are actually used to defray expenses which such recipient would otherwise incur. *Cf.* Cooper v. Carleson, 1973, 31 Cal.App. 2d 546, 107 Cal.Rptr. 502. In our view, such a showing has been sufficiently made here. The mortgage payments made by plaintiff's spouse directly to the mortgagee, pursuant to the probate court decree, though insufficient to meet the required monthly amount, nonetheless directly benefit plaintiff by reducing her necessary housing costs. Such a resource is "current" in the sense that its continued payment is guaranteed and enforceable. And it is "available" in the sense that such sums do actually reduce expenses for which plaintiff would otherwise be liable.

Plaintiff overstates her true claim when she says she is obliged to pay $84 a month to live in the family house. While this is true if her only option is to live in that house or nowhere, the Department has no reason to assume that the probate court would not require her husband to contribute to her housing if she lived somewhere else. Nor should the Department be under a duty to inquire on a case by case basis, either as to this issue, or to the precise proportion that a husband's payment goes to maintain the house as distinguished from recovering the equity from the mortgagee as a capital asset. It must be enough for the administration of so broad reaching an enterprise as AFDC that the Department establish reasonable regulations that admit of ready application.

Therefore, we believe that these payments could legitimately be considered a "currently available resource" under 45 C.F.R. § 233.20(a)(3)(ii)(c), and thus may properly be taken into consideration in determining the plaintiff's actual budgetary needs. 42 U.S.C. § 602(a)(7).

Reversed and remanded with instructions to dismiss the complaint.